Seymour Bieber, Spec. Ref.
Plaintiff seeks to recover damages of approximately $140,000 allegedly sustained by it as the result of certified public accountants’ professional negligence in issuing a financial balance sheet which contained substantial errors in the listed inventory and surplus accounts.
Defendants, in effect, are charged with failure to perform properly their contract to audit plaintiff’s books and records, with breach of warranty and with negligence in the preparation and issuance of the subject financial statement.
The trial of this action was commenced before Justice Margaret Mary Mangan and a jury. During such trial, upon stipulation of counsel and consent of the court, the jury was *1055 waived and the matter referred to me, to hear and determine. It was further stipulated that all evidence adduced before Justice Mangan be deemed to be a part of the record before me.
It appears that in or about March, 1955, plaintiff, by oral retainer, had employed defendants, a firm of certified public accountants, to perform usual and required audits of its books and records. Pursuant to such retainer, the credible evidence shows that defendants, by their employees, undertook to verify the accuracy of plaintiff’s ledger entries, to prepare interim financial reports, to audit the books of account and to verify the amount of plaintiff’s inventory, its most significant business asset. Accordingly, employees of defendants who attended plaintiff’s premises at least several days a month supervised those employees of plaintiff who made the original entries in its books and records.
The record establishes that plaintiff was engaged in the business of converting cotton and rayon greige goods. None of the goods so processed by plaintiff was kept in its own premises but was delivered to plaintiff’s customers directly from the converting mills, finishing plants, dye or embossing firms. A physical inventory of merchandise belonging to plaintiff could be obtained only during Summer months when these establishments ceased operations temporarily for a vacation period. Few, if any, such physical inventories were made by defendants. They relied, instead, primarily upon invoices and other statements furnished to plaintiff by these various firms, as well as plaintiff’s own books and records.
On August 7, 1957, defendants issued a balance sheet of the financial position of the corporate plaintiff as of April 30 of that year. This financial statement was prepared by one of defendants’ senior certified public accountants. The subject financial statement, significantly, appears on defendants’ letterhead and, unlike other statements prepared and issued by them, it failed to carry the usual disclaimer stamp to the effect that such statement was based upon unaudited figures in their client’s books and records. The complaint alleges that this balance sheet erroneously represented plaintiff’s surplus at $8,152.79 and an inventory of $196,646.23, whereas there was, in fact, a deficit of $53,540.87 and an inventory of only $134,952.57.
The credible evidence adduced before me clearly establishes that instead of operating at a profit as of April 30, 1957, as advised by defendants ’ financial statement in issue here, plaintiff, in fact, was operating at a net loss of at least $29,000 and possibly as much as almost $50,000. This is apparent from *1056 the documentary proof and an August, 1958 reaudit of plaintiff’s books and records by its expert witness, who, by the use of accepted accounting standards and auditing procedure, reconstructed an analysis of plaintiff’s purchase of greige goods, sales of finished goods and its production costs from April, 1955 to April 30, 1957. A similar reaudit and confirmation analysis was made by this expert, in conformity with accepted auditing and accounting procedures, working back from June 30, 1957 to April 30, 1957, the date of the disputed financial statement. Viewed in the light most favorable to defendants, contrary to their contention, these reaudit procedures clearly show that the unqualified financial statement issued by them to plaintiff contained an overstatement of surplus and of inventory, the latter being overvalued by at least $37,000.
It is plaintiff’s position here that had it been properly advised by defendants that it was operating at a loss, it would have terminated its business affairs and not suffered any further losses until discovery of its true financial condition a year or so later. Defendants, on the other hand, in addition to maintaining the position that there is no error in the April 30, 1957 balance sheet, an untenable contention clearly refuted by the credible evidence (supra), also claim an accountant has no liability, “ in cases of this kind ”, for an error in his judgment as to the exact valuation to be assigned to the merchandise his employer has on hand. Concededly, it is well-established law throughout this country that an accountant does not guarantee correct judgment, or even the best of professional judgment, but merely reasonable competence (see Gammel v. Ernst & Ernst, 245 Minn. 249; Maryland Gas. Co. v. Cook, 35 F. Supp. 160, 166; 54 ALR 2d 324 et seq.). It is to the credit of the accounting profession that there are relatively few reported cases charging the accountant with incompetent judgment, the three most frequently cited actions involving fraud, gross negligence and liability to third parties (State St. Trust Co. v. Ernst, 278 N. Y. 104; C. I. T. Fin. Corp. v. Glover, 224 F. 2d 44; O’Connor v. Ludlam, 92 F. 2d 50).
In the instant matter, however, the exercise of judgment is not in issue, defendants’ contention to the contrary notwithstanding, for in preparing the disputed financial statement, the accountant had no cause to rely upon judgment at all. The documentary proof clearly shows that all defendants’ did in the-preparation of the subject balance sheet was to make mathematical computations from plaintiff’s books and records, without the need for or the actual exercise of any independent judgment.
Proper auditing procedure, as is necessarily involved in the *1057 preparation of an unqualified financial statement, must be distinguished from accounting or mathematical procedures, despite the fact that defendants’ witness claimed there is no such distinction. On the contrary, unlike accounting or mere mathematical calculating, in auditing procedures, accepted professional standards require a certified public accountant to set forth clearly and unambiguously in his report a statement to the effect that a physical inventory was not observed (Levy, Accountants’ Legal Responsibility [1954], p. 18; American Institute of Accountants, Committee on Auditing Procedure, Generally Accepted Auditing Standards — Their Significance and Scope [1954]). While there are legal precedents for holding that it was not negligent for an accountant to accept the report or work of a responsible employee of his client without independent verification, these, generally, are old and outmoded cases (e.g., Matter of Kingston Cotton Mills [1896] 2 Ch. 279). It is apparent that contemporary professional standards now require verification by an independent check or sampling process, or a clear statement by the accountant limiting, qualifying or disclaiming the affected portion of the issued financial report (Roady and Andersen, Professional Negligence [1960], p. 264).
At least since 1905, accountants, in this country, have been accepted as a “ skilled professional class * * * subject generally to the same rules of liability for negligence in the practice of their profession as are members of other skilled professions ” (Smith v. London Assur. Corp., 109 App. Div. 882-883; see, also, Ann. 54 ALR 2d 324; Rich, Legal Responsibilities and Rights of Public Accountants [1935]; Roady and Andersen, Professional Negligence, supra, p. 256 et seq.). The certified public accountant, by virtue of his attained position and his contract of employment, must exercise the care and competence reasonably expected of persons in his profession to ascertain the facts on which his financial report is made. While his retainer agreement may set forth only the duties to be performed, applicable law governs such performance and requires, in addition to reasonable care, adherence to accepted professional standards (supra). If he fails to perform in accordance therewith, the accountant then may be liable either for breach of his contract or, in tort, for failure to exercise due care (Ultramares Corp. v. Touche, 255 N. Y. 170; Duro Sportswear v. Cogen, 131 N. Y. S. 2d 20, affd. 285 App. Div. 867; see, also, State St. Trust Co. v. Ernst, supra; National Sur. Corp. v. Lybrand, 256 App. Div. 226, 235; Smith v. London Assur. Corp., supra; Maryland Cas. Co. v. Cooh, supra; 1 N. Y. Jur., Accountants, §§ 9,10).
*1058 Thus, under applicable law, defendants are not relieved of liability solely on the ground, as they urge, that the subject balance sheet merely purported to reflect the condition of plaintiff’s books. Contrary to defendants’ contention, professional auditing and accounting standards, as above noted, require that they verify stated inventory by a reliable, independent check or sampling process, or plainly state that it has not been done (■Code of Professional Ethics of the American Institute of Certified Public Accountants, rule 2.03; Ready and Andersen, supra, p. 264; Levy, Accountants’ Legal Responsibility, supra). This, defendants failed to do.
In this respect, it is to be noted that the cited rule 2.03 of the American Institute of Certified Public Accountants also requires that a certified public accountant, when he associates his name with a financial statement, (1) express an unqualified opinion; or (2) disclaim an opinion; or (3) express a qualified opinion; or (4) when unaudited financial statements are presented on his stationery without comment, disclose prominently on each page of the financial statement the fact that they were not audited. Defendants’ failure to place any qualification notice on the subject balance sheet, therefore, clearly constituted a violation of the emphasized portion of the cited rule which, without any doubt, fixes the existing and accepted standards of their profession.
In view of these recognized standards, therefore, the balance sheet here involved, issued under defendants’ professional letterhead, must be deemed to be an unqualified and, in effect, an audited financial statement upon which plaintiff had the right to rely in order to determine and evaluate its financial condition as of April 30, 1957. It is clear that in order to relieve themselves of any liability for errors contained in this April 30, 1957 balance sheet, defendants could have and should have indicated on its face all items that were not independently verified. Having failed to do so, they must assume any attendant liability.
Thus, giving due consideration to all of the evidence before me, I find that in issuing the subject balance sheet, defendants failed to conduct the required audit and, in effect, improperly represented on their professional letterhead, that the figures taken by them from plaintiff’s books and records were verified and audited computations (Duro Sportswear v. Cogen, supra; State St. Trust Co. v. Ernst, supra; Ultramares v. Touche, supra).
In addition to this failure to conduct a proper audit or to qualify their statement accordingly, the proof also indicates that defendants arbitrarily set up at least two accounting adjust *1059 ments affecting the surplus and sales returns figures, thereby arriving at their “finished goods” value of $53,407.47 in the April 30 balance sheet. Significantly, no reconciliation of the surplus account accompanied the delivery of this financial statement to advise plaintiff properly of these adjustments, nor did defendants, in any manner, qualify or otherwise explain these accounting manipulations in the subject balance sheet. Similarly, while the proof clearly establishes that defendants had facts available to them at the time they delivered this balance sheet to plaintiff to indicate that this financial statement was, or, at the very least, might be inaccurate, they did not, as they contend, advise plaintiff of any such possibility until after delivery of their unqualified financial report. In my opinion, all of this proof, coupled with the subsequently revealed substantial inaccuracies in the balance sheet, must be deemed to constitute actionable negligence.
With respect to plaintiff’s cause of action sounding in negligence, however, although the proof leaves no doubt as to the professional carelessness of defendants, and while a proper audit would have revealed plaintiff’s true financial condition, the record does not contain sufficient credible evidence to warrant the conclusion that defendants’ errors or the omission of the qualifying statement were the proximate cause of all the damage for which plaintiff seeks recovery here (see Craig v. Any on, 212 App. Div. 55, affd. 242 N. Y. 569). The proof adduced before me establishes that when discrepancies in their issued statement were later discovered by defendants, they then alerted plaintiff to these inaccuracies. Thereafter, plaintiff also continued to receive from defendants all the additional information concerning its inventory which an audited or unqualified balance sheeet would have contained. Moreover, there is proof which indicates that despite defendants’ recommendations and advice, plaintiff failed to hire additional or adequate clerical help to follow through on the inventory information supplied to it by defendants. Such recommendations, if accepted, would have eliminated or, undoubtedly, minimized any subsequent loss suffered by plaintiff. In my opinion, therefore, plaintiff’s claim that it remained in business, with the consequent damage, solely in reliance on the information set forth in the erroneous balance sheet is without merit and unsupported by the credible proof.
Upon the evidence before me, therefore, I find plaintiff is entitled to recover from defendants only (1) the accounting and auditing fees paid to defendants for the one year of services rendered by them immediately prior to the issuance of the erroneous balance sheet, to wit, $3,600 (12 months at $300 per *1060 month) and (2) the accounting and auditing fees necessitated by the review of this erroneous statement, to wit, $2,500. All other claimed items of damage are denied. Plaintiff, as noted, has failed to prove that they flow naturally, directly and solely from defendants’ negligence or their breach of contract (Craig v. Any on, supra, p. 66; see, also, Deyo v. Hudson, 225 N. Y. 602, 615-616).
Accordingly, judgment is rendered in favor of plaintiff against defendants in the sum of $6,100, with interest from August 7, 1957, the date of the delivery of the subject balance sheet.