Clinton O. and Lura Curtis JONES ME-
MORIAL TRUST by Frederick M. My-
ers, Frederick T. Francis, James C.
Hart and H. George Wilde, as Trus-
tees of the Clinton O. and Lura Curtis
Jones Memorial Trust, Plaintiff,

v.

TSAI INVESTMENT SERVICES,
INC., Defendant.

No. 71 Civ. 3712.

United States District Court,
S. D. New York.

Nov. 28, 1973.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for plaintiff; James E. Tolan, Jonathan C. Lane, New York City, of counsel.

Shearman & Sterling, New York City, for defendant; Danforth Newcomb, New York City, of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEVET, District Judge.

This is an action by the above-named four trustees ("Trustees") against defendant Tsai Investment Service, Inc. ("TISI").

After plaintiff's case had been submitted and with the consent of plaintiff's counsel the Complaint against the two individual defendants, Gerald Tsai, Jr. and Robert Campbell, Jr., was dismissed, leaving TISI as the sole defendant.

Jurisdiction is based on diversity. Plaintiff filed this action under the "anti-fraud provisions of the Investment Adviser's Act of 1940 (15 U.S.C. § 80b–6(1), (2), and (4)), New York General Business Law § 352–c and New York State common law." Frederick M. Myers, Frederick T. Francis, James C. Hart and H. George Wilde sued as trustees of the "Clinton O. and Lura Curtis Jones Memorial Trust" ("Trust"). The Trust is said to be a "tax exempt charitable Trust created by a Trust Agreement on August 18, 1966 to award college scholarships to students from Berkshire County, Massachusetts." TISI is an "investment advisory company."

Plaintiff claims to be entitled to damages based upon the difference between the fair market value of the securities in the Trust's portfolio on or about November 27, 1968, to wit, $1,006,507, when TISI began performing its investment advisory services pursuant to contract with the Trust, and the fair market value of the securities in the Trust's portfolio on or about December 31, 1970, when the Trust terminated its contract with TISI, to wit, $643,757, less allowance of a credit for profits gained in the Trust's portfolio during the period June 1, 1970 to December 31, 1970. (85–86, 88–89, 315–316.) [1]

## DEFENSES

The defenses raised by the Answer of TISI include denials and certain affirmative defenses, including:

(1) That the Complaint fails to state a claim upon which relief can be granted (¶ 38 of Answer);

(2) That the trustees gave prior approval of, acquiesced in, had knowledge of and/or ratified the transactions of which they now complain and thereby waived the claims asserted in the Complaint (¶¶ 39–42 of Answer);

(3) That "By reason of such prior approval, acquiescence, knowledge and/or ratification the plaintiff is estopped from asserting the claims contained in the Complaint" (¶ 44 of Answer);

(4) That for the reasons asserted in (3) hereinabove the doctrine of ratification bars plaintiff from asserting the claims alleged in the complaint;

1. Numbers in parentheses, unless otherwise indicated, refer to the stenographic minutes of the trial before this court on September 24, 25 and 26, 1973.

(5) Other defenses relating to plaintiff's lack of standing to sue and lack of jurisdiction are raised in defendant's Answer (¶¶ 47 and 48) ; neither of these defenses is valid;

(6) Another affirmative defense is stated in paragraph 51 of the Answer and is as follows:

"51. With respect to any transaction complained of, the plaintiff agreed with TISI as follows:

" * * * we agree that you will not incur any liability in respect to any recommendation, act, or failure to act, made, taken or omitted hereunder in good faith, and we and our successors hereby agree to indemnify you and your successors and to hold harmless you and your successors from and against all loss, damage and cost incurred by you or your successors by reason of any action taken hereunder or in reliance hereon prior to the receipt by you of written notice of revocation of this authorization by us."

The case was tried to the court without a jury.

After hearing the testimony of the parties, examining the exhibits and the Proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. This court has jurisdiction over the subject matter and the parties to this action. 28 U.S.C. § 1332.

2. The Trust is a tax-exempt trust created by Clinton O. Jones for the purpose of making loans to college students from Berkshire County, Massachusetts. (6, 12, 22–24; Ex. 3, ¶ 3, Ex. D.²) Said Trust was created by a Trust Agreement dated August 18, 1966. (Ex. 3, ¶ 3.) Frederick M. Myers ("Myers"), Frederick T. Francis ("Francis"), James C. Hart ("Hart"), and H. George Wilde ("Wilde") are the Trustees of the Trust. (5, 9–10; Ex. 3, ¶ 4; Ex. D.) All four Trustees are citizens and residents of Berkshire County, Massachusetts. (3, 9–10; Ex. 3, ¶ 4.) The original Trust corpus was $100. Subsequently it was increased by a bequest of approximately $1,000,000 from said settlor Clinton O. Jones, who died in the fall of 1967. (12–13; Ex. 3, ¶ 3.)

3. At all relevant times to this action, TISI was a corporation chartered in the State of New York with its principal place of business in the State of New York and was a registered broker-dealer under the Securities Exchange Act of 1934 and a registered investment advisor under the Investment Advisers Act of 1940. (Ex. 3, ¶ 7.)

4. At all times relevant to this action Gerald Tsai, Jr., Robert T. Campbell, Jr. ("Campbell") and Paul H. Jenkel ("Jenkel") were employed by TISI. (Ex. 3, ¶¶ 10, 12, 13.) At the time that Campbell and Jenkel began working on the Trust's portfolio they were both experienced in recommending investments for client's discretionary accounts. (165, 253, 255; Ex. 3, ¶¶ 12–15.) Campbell and Jenkel were the agents of TISI in all their dealings with the Trustees. (Ex. 3, ¶ 32.)

5. Goodbody & Co. are stock brokers with an office in Pittsfield, Massachusetts, managed by Francis (one of the Trustees). Goodbody has other offices nationwide. (10, 226–228, Ex. 3, ¶ 6, Ex. 12, p. 2.) At all times relevant to this action Goodbody, at the Trust's direction, maintained actual custody of the Trust's securities including those purchased for the Trust upon TISI's recommendation. (59–60; Ex. 3, ¶ 28; Ex. 12, p. 2.)

6. On or about November 5, 1968 the Trust and TISI entered into a written contract pursuant to which TISI, as an entity, was to provide the Trust with investment advice. Said written contract required TISI, as an entity, to use its actual knowledge of the Trust's investment objectives and its actual knowledge

---

**2.** The parties stipulated certain facts and said stipulation was admitted as Exhibit 3.

of stock market conditions in recommending such investments to the Trust as it, as an entity, considered "advisable." (Exs. 10, 11.)

7. Said written contract further required TISI to follow certain unusual procedures in submitting its recommendations to the Trust, in that said contract required TISI to obtain approval from Trustee Francis or Trustee Myers of proposed recommendations prior to execution of a transaction. If either Francis or Myers was unavailable, TISI was authorized to obtain approval from either Trustee Wilde or Trustee Hart to fulfill said condition. If none of the four Trustees was available and TISI felt "that action must be taken * * *" TISI was authorized to proceed without obtaining such prior approval. (Ex. 12.) In addition, said contract required TISI to pass its recommendations directly to Goodbody & Co., Pittsfield, Massachusetts, "attention of Mr. Francis," provided TISI considered this feasible. (Ex. 12.)

8. Said written contract further provided:

"To the extent, and only to the extent, that such agreement is not prohibited or invalid under applicable law, including without limitation, the federal Investment Adviser's Act of 1940, we [the Trust] agree that you [TISI] will not incur any liability in respect of any recommendation, act, or failure to act, made, taken, or omitted hereunder in good faith, and we * * * hereby agree to indemnify you * * * and to hold [you] harmless * * * from and against all loss, damage and cost incurred by you * * * by reason of any action taken hereunder or in reliance hereon prior to the receipt by you of written notice of revocation of this authorization by us. The authority contained herein shall remain in full force and effect until receipt by you of written notice of revocation of this authorization by us." (Exs. 10, 11.)

9. The said written contract was terminable at will by either TISI or the Trust upon "written notice [of termination] * * * given to the other." (Exs. 10, 11.)

10. Prior to entering into said written contract with TISI, and during September 1968, Trustee Myers instructed TISI that it was the "wish" of the Trustees to "develop" the Trust's principal "so as to be able to offer the maximum amount of scholarship assistance." (20, 113–114; Ex. 4; Ex. D.) At a September 1968 meeting between Myers and Campbell (21) Myers stated that he wanted the Trust's funds to be invested aggressively. (339–340, 374.) The aforesaid capital growth goal accurately describes the Trustees' investment objective from the time the parties entered into said contract until May 31, 1970. (113–115, 119–120, 341.) TISI, through its agents Campbell and Jenkel, understood that the Trustees' actual investment objective was capital growth. (265–266, 341, 349; Ex. D.) In recommending investment transactions to the Trust, TISI was guided by the principle of capital growth. (267, 352, 359; Ex. 22.)

11. During September, October and December 1968 the following representations were made to the Trustees by TISI:

(a) That TISI works through a team of investment advisers. (27, 30–31, 342);

(b) That it was Campbell's practice to meet with Gerald Tsai, Jr. and the portfolio managers daily in order to discuss investment recommendations (30–31);

(c) That Campbell and Jenkel would be working on the Trust's investment recommendations. (51, 55–56); and

(d) Through promotional literature (Ex. 5) and by other means, that TISI was guided by a philosophy of aggressiveness and capital growth in recommending investments to its clients. (42, 115–116, 119–121, 122–123, 384–386; Ex. 5, Ex. 9, p. 1.)

However, Campbell never represented that he would personally manage the

Trust's recommendations. (343.) TISI, in performing investment advisory services for the Trust, conformed to all said representations. (257, 267, 292, 352, 356–359; Ex. 22, pp. 1, 2.)

12. During September 1968 Campbell handed Myers a list which purported to compare TISI's achievements for some of its clients with the performance of the Dow Jones Industrial Average during comparable time periods. (115–116, 186–191, 385–386; Ex. B.) The aforesaid list makes no mention of specific securities.

13. On November 27, 1968 TISI began performing investment advisory services for the Trust (50, 129; Ex. 3, ¶ 20), at which time the Trust's portfolio had a fair market value of $1,006,507. (14–15; Ex. 3, ¶ 20, Ex. A, p. 2.)

14. TISI kept the Trustees currently informed of daily changes in the Trust's holdings. (131, 136, 235–236, 270–271, 293–294.) Goodbody & Co. of Pittsfield, Massachusetts submitted monthly reports to the Trustees indicating transactions executed for the Trust. (130–131.) In addition, after Campbell had conducted a review of the Trust's portfolio (173), TISI submitted detailed quarterly reports of the Trust's performance to Myers and Francis. (60–66, 132–135; Exs. 13–17.)

15. At no time prior to June 10, 1970 did any Trustee disapprove of any security bought, held or sold on TISI's recommendation, or complain that any of said securities were inappropriate to the Trust's investment needs or objectives despite the fact that said Trustee had ample opportunity to disapprove or complain. (90, 129–130, 143–147, 157–159, 269, 297, 324, 353–355.) The Trustees first complained to TISI on or about June 10, 1970, at which time said Trustees merely objected to the Trust's decline in value. (146–147, 157–158; Ex. 19, Ex. 23, ¶¶ 4, 5.)

16. On May 31, 1970 the Trust's portfolio had a fair market value of $586,147. (Ex. 24.) The Trustees terminated said contract as of December 31, 1970 (88), at which date the Trust portfolio had a fair market value of $643,757. (Court's Exhibit 1.[3])

17. Plaintiff Trust claims to have sustained damages in the amount of $305,140, computed as follows:

Trust's fair market value at the time the contract was executed (Finding of Fact 13) ................... $ 1,006,507

Trust's fair market value at the time the contract was terminated (Finding of Fact 16) ................... $ 643,757

Gross damages claimed by plaintiff Trust ....... $ 362,750

Trust's fair market value on December 31, 1970 (Finding of Fact 16) ......... $ 643,757

Trust's fair market value on May 31, 1970 (Finding of Fact 16) ................. $ 586,147

Credit for Trust's profits gained between May 31, 1970 and December 31, 1970 (as computed from the above) ................................. $ 57,610

Net amount of damages claimed by plaintiff Trust ................................. $ 305,140

---

3. Court's Exhibit 1 consists of three charts attached to the parties' stipulation of fact. Said stipulation constitutes Exhibit 3. (See Note (2), supra, page 494 hereof.)

Plaintiff Trust makes no claim to and offered no evidence of the amounts it paid to defendant TISI as fees for investment recommendations provided by TISI to the Trust. (85–86, 88–89, 315–316.)

18. Plaintiff submitted no proof to show that the decline in value of the trust securities was due to any act or failure to act or from any mismanagement by defendant or any cause for which defendant was responsible. The Trustees approved each purchase. The Trustees sought capital gains. The defendant endeavored to obtain capital gains. Under the circumstances herein set forth the defendant is not responsible for the results.

### · DISCUSSION

At trial the parties stipulated that New York law governs. (60.)

### THE INVESTMENT ADVISERS ACT OF 1940

 Plaintiff argues that a client has a cause of action against his investment adviser under Section 206 of the Investment Advisers Act of 1940, 15 U. S.C. § 80b–6 (1960), amending 15 U.S.C. § 80b–6 (1940) ("Section 206 of the Investment Advisers Act of 1940")[4] when said investment adviser mismanages the process of researching and recommending investment transactions for said client's account. The plain words of Section 206 of the Investment Advisers Act of 1940 make no mention of mis-

management, but speak solely and exclusively to concealment and misrepresentation. Moreover, in Kutner v. Gofen and Glossberg, CCH Sec. L. Rept. ¶ 93,109 (7th Cir. July 7, 1971) (1970–1971 Transfer Binder) the court held that a client's charge of mismanagement by his investment adviser fails to satisfy the basic requirements of said statute. In addition, there is no credible evidence on the record that TISI mismanaged the processes it used in formulating recommendations for the Trust nor is there any evidence whatever as to what the standard of care is for a properly managed investment advisory service.

 Plaintiff next argues that TISI violated 17 C.F.R. § 275.206(4)–1(a)(2) [5] when Campbell handed Myers a list summarizing TISI's achievements for some of its accounts (Ex. B) during September 1968. The aforesaid regulation prohibits certain deceptive practices with respect to an investment adviser's publicizing "past specific recommendations." It is undisputed that the aforesaid list made no mention of specific recommendations. (See Finding of Fact 12.) The said list was therefore not within the prohibitions of 17 C.F.R. § 275.206(4)–1(a)(2) and plaintiff's contention is without merit.

### NEW YORK GENERAL BUSINESS LAW § 352–c

Plaintiff contends that defendant has violated New York General Business Law § 352–c (1955), amending New

4. Section 206 in pertinent part reads:
"Prohibited Transactions by investment advisers—It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
(1) to employ any device, scheme, or artifice to defraud any client or prospective client;
(2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;
* * * * *
(4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. The Commissioner

shall * * * prescribe means reasonably designed to prevent such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative."

5. In pertinent part 17 C.F.R. § 275.206(4)–1 reads:
"(a) It shall constitute [a violation] * * * of the Act for any investment adviser, directly or indirectly, to publish * * * any advertisement:
* * * * *
"(2) Which refers, directly or indirectly, to *past specific recommendations* of such investment adviser which were or would have been profitable to any person." (Emphasis supplied.)

York General Business Law § 352 (1935) (hereinafter "§ 352–c"[6]). This contention is unfounded.

The gist of § 352–c was tersely summarized in People v. Cadplaz Sponsors, Inc., 69 Misc.2d 417, 419, 330 N.Y.S.2d 430, 432 (Sup.Ct.N.Y.Co.1972). The statute prohibits "all deceitful practices contrary to the plain rules of common honesty. [Citation omitted.] Its purpose is to defeat any scheme whereby the public is exploited. * * * All acts tending to deceive or mislead the public, whether or not the product of *scienter* or intent to defraud, come within its umbrella. [Citations omitted.]"

█ In essence, plaintiff argues that defendant concealed its actual method of researching and recommending securities from plaintiff and that said concealment was prohibited by the statute. However, there is no credible evidence that defendant concealed its method of researching and recommending investment transactions for plaintiff's account. Moreover, all of the credible evidence indicates that defendant fully disclosed its processes for recommending securities for plaintiff's account. During September, October and December 1968 TISI made detailed truthful representations concerning its internal operations. (See Finding of Fact 11.) In conformity with the aforesaid represen-

tations (a) Campbell and Jenkel worked as a team, together, and with other investment advisers of TISI in formulating recommendations for the Trust (257, 267, 292, 328, 356–357); (b) Campbell met individually with Gerald Tsai, Jr. (356) and with Jenkel and other portfolio managers on a daily basis in order to discuss investment recommendations for the Trust (356–357); (c) Campbell personally researched and recommended securities to the Trust (56, 349, 358, 359; Ex. 22, p. 2) as did Jenkel (328); and (d) in recommending transactions to the Trust, TISI was guided by the principle of capital growth. (267, 294–295, 352, 358–359; Ex. 22, p. 1.) In addition, the statute does not create a cause of action for the facts as alleged. The rule laid down in Herdegen v. Paine, Webber, Jackson & Curtis, 31 Misc.2d 104, 220 N.Y.S.2d 459 (Sup.Ct. N.Y.Co. 1961) is that "[t]he statute cannot be reasonably extended to cover a purchaser who does not make his purchase from the misrepresenter, but makes such purchases from another broker." Id. at 105, 220 N.Y.S. 2d at 460. The effect of this holding is that an investment adviser who is not a stock broker is beyond the prohibitions of the statute. It is undisputed that TISI was investment adviser and never was stock broker for the Trust. TISI is therefore beyond the prohibitions of the statute.

---

**6.** Section 352–c reads:

"Prohibited acts constituting misdemeanor

"1. It shall be illegal and prohibited for any person, partnership, corporation, company, trust or association, or any agent or employee thereof, to use or employ any of the following acts or practices:

"(a) Any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale;

"(b) Any promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances;

"(c) Any representation or statement which is false, where the person who made such representation or statement: (i) knew the truth; or (ii) with reasonable effort could have known the truth; or (iii) made no reasonable effort to ascertain the truth; or (iv) did not have knowledge concerning the representation or statement made;

where engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities or commodities, as defined in section three hundred fifty-two of this article, regardless of whether issuance, distribution, exchange, sale, negotiation or purchase resulted.

"(2) It shall be illegal and prohibited for any person, partnership, corporation, company, trust or association, or any agent or employee thereof, to engage in any artifice, agreement, device or scheme to obtain money, profit or property by any of the means prohibited by this section.

"(3) A person, partnership, corporation, company, trust or association, or any agent or employee thereof, using or employing any act or practice declared to be illegal and prohibited by this section, shall be guilty of a misdemeanor."

## CONTRACTS

Plaintiff contends that an oral agreement obligated TISI to have Campbell personally manage the Trust account's recommendations or, in the alternative, to have Campbell or Gerald Tsai, Jr. supervise Jenkel's management of the Trust account and that TISI violated one of the aforesaid obligations. This contention is without merit.

■ The parol evidence rule provides that in order for a purported oral agreement to vary a written contract, said "oral agreement * * * must not contradict express or implied provisions of the written contract * * * [and] must not be so clearly connected with the particular transaction as to be part and parcel of it. * * * Each [case] represents the judgment of the court on the precise facts before it." Mitchill v. Lath, 247 N.Y. 377, 380–381, 382, 160 N.E. 646, 647 (1928); Fogelson v. Rackfay Constr. Co. Inc., 300 N.Y. 334, 338–339, 90 N.E.2d 881 (1950). Plaintiff and defendant entered into a written contract which clearly and unambiguously provided for defendant to make a corporate judgment in its discretion in recommending investment transactions to plaintiff. (Finding of Fact 6.) The purported oral agreement squarely contradicts and is inextricably related to the aforesaid written contract.

■ Plaintiff asks for contract damages in the amount of the Trust's losses during the period that TISI handled the Trust's recommendations. Plaintiff's claim must fit within the New York court's measure of either general or special contract damages in order for the claim to be allowable. The measure of general damages, where defendant's defective performance of services is the breach of contract, is the fee paid to defendant for the services it rendered to plaintiff. See Stanley L. Bloch, Inc. v. Klein, 45 Misc.2d 1054, 258 N.Y.S.2d 501 (Sup.Ct. N.Y.Co. 1965). In order for special damages to be allowable, the courts require that the defendant had knowledge of special circumstances making probable special loss and that the defendant had this knowledge or should have had this knowledge at the time of or prior to contracting. Czarnikow-Rionda Co. v. Federal Sugar Ref. Co., 255 N.Y. 33, 43, 44, 173 N.E. 913 (1930); Field v. Auto. Club of New York, 26 A.D.2d 534, 271 N.Y.S.2d 516 (1966); Long Island Lighting Co. v. City of Glen Cove, 64 Misc.2d 768, 771, 315 N.Y.S.2d 656 (Sup. Court Nassau Co. 1970). There is no credible evidence on the record indicating that TISI had any knowledge or reason to know of such special circumstances making probable special loss.

## FRAUD

■ It was plaintiff's burden to prove by clear and convincing evidence that defendant committed fraud. Rudman v. Cowles Communications, Inc., 30 N.Y.2d 1, 10, 330 N.Y.S.2d 33, 280 N.E. 2d 867 (1972). Conceding that the elements of actionable common law fraud are misrepresentation of a material fact, *scienter*, reliance and injury, plaintiff contends that alleged misrepresentations, consisting of promises or predictions as to future facts, satisfy the requirement of misrepresentation of a material fact.

■ In order for a prediction or promise to satisfy the requirement of misrepresentation of a material fact said prediction or promise must have been made with an intent not to comply therewith. Sabo v. Delman, 3 N.Y.2d 155, 159–160, 164 N.Y.S.2d 714, 143 N. E.2d 906 (1957). The contention that plaintiff has proved such intent is unsupported. No credible evidence indicates that defendant had the required intent. On the other hand, there is persuasive evidence of intent in the fact that defendant complied with every representation that it made to plaintiff. (Finding of Fact 11.)

■ In order to satisfy the requirement of reliance there must be proof

that plaintiff's reliance was justifiable. See Channel Master Corp. v. Aluminum Limited Sales, Inc., 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958); Hanlon v. Macfadden Publications, Inc., 302 N.Y. 502, 509, 99 N.E.2d 546 (1951). There is no credible evidence that plaintiff justifiably relied on the alleged misrepresentations. Any alleged reliance was unjustifiable in light of the terms of the written contract by which the Trustees agreed to accept TISI's corporate performance of its contractual obligations and by which the Trustees agreed to indemnify TISI for any injuries inflicted by TISI upon the Trust. (Findings of Fact 6, 8.)

■ "Damage is always one of the essential elements of fraud." Clearview Associates, Inc. v. Clearview Gardens First Corp., 8 Misc.2d 470, 474, 168 N.Y.S.2d 432, 437 (Sup.Ct. Queens Co. 1957). Again, it is plaintiff's burden to prove his damages. Toho Bussan Kaisha, Ltd. v. American President Lines, Ltd., 265 F.2d 418, 422 (2d Cir. 1959) (applying New York law).

■ Conceding that the proper measure for damages for fraud is indemnity for the actual pecuniary loss sustained as a direct result of the wrong, plaintiff contends that its actual pecuniary loss was the aforesaid decline in the Trust's value. This contention is without merit. The present case is one of first impression in New York. Many New York cases repeat the statement that the proper measure of damages for fraud is indemnity for the actual pecuniary loss sustained but no New York court has applied the aforesaid rule in a case where the principal charges that the agent fraudulently induced the principal into entering into a principal-agent relationship with said agent. The gist of the plaintiff's charge in the present dispute is that defendant fraudulently induced him into entering into a principal-agent relationship with defendant,

the plaintiff acting as the principal and defendant as the agent. This being a case of first impression I have found the Hanlon v. Macfadden case, supra, to present the most appropriate analogy. In that case the employee charged that the employer had fraudulently induced said employee into entering into an agreement to modify their former employment agreement. The court held that "[t]he true measure of damages here is the difference between the value of plaintiff's services and the price he was actually paid for them by reason of defendant's deceit." Hanlon v. Macfadden, supra at 511 of 302 N.Y., at 551 of 99 N.E.2d. Accordingly, the proper measure of damages here is the difference between the actual value of the agent's services as performed and the price he was actually paid for such services by reason of his own deceit. This is the fees, if any, paid pursuant to the contract. I have searched the record and found utterly no evidence of the amounts plaintiff actually paid defendant, if any.

■ Plaintiff here must show specific damages by the purchase of particular securities and that the cause therefor was some reason for which defendant was responsible. This, plaintiff has not done. The mere decline in value from one day to another is insufficient to impose liability against defendant for such purchases or to measure damages therefor upon a wholesale basis.

## FIDUCIARY DUTY

■ Plaintiff's contention that defendant owed a fiduciary duty to plaintiff, which defendant breached, is without merit. Plaintiff contends that the relationship between an investment adviser and his client, without more, inexcusably binds the investment adviser to prevent any decline in the client's portfolio or pay the difference. This is clearly erroneous.

In addition, plaintiff contends that the law inexcusably requires an investment adviser to disclose to his client the mechanical research procedures it utilizes on the client's behalf. These contentions are without merit. Plaintiff cites no case which supports the proposed rules although he cites several cases concerned with trustees, executors, administrators and guardians. Moreover, I have found no case to support the proposed rules.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the persons and subject matter of this action.

2. New York law governs the rights of the parties to this action. (Stipulation at 60.)

3. Plaintiff has failed to prove by a fair preponderance of the credible evidence that defendant TISI violated Section 206 of the Investment Advisers Act of 1940.

4. Plaintiff has failed to prove by a fair preponderance of the credible evidence that defendant violated New York General Business Law § 352–c.

5. Plaintiff has failed to prove by a fair preponderance of the credible evidence: (a) that defendant breached its contract with plaintiff; or (b) that defendant breached its fiduciary duty.

6. Plaintiff has failed to prove by clear and convincing evidence that defendant committed fraud.

7. Plaintiff has failed to prove its damages by a fair preponderance of the credible evidence. The damages claims of plaintiff as stated in Finding of Fact 17 are inadequate as a basis for any particular amounts of damages.

8. Defendant is entitled to judgment dismissing the complaint, together with costs and disbursements in this action.

Settle judgment upon notice pursuant hereto.