[Civ. No. 1195. Fourth Appellate District.—September 25, 1936.]

GEO. L. FLAGG, Trustee, etc., Appellant, v. PAUL R. SENG et al., Respondents.

Ed. P. Sample and William H. Wylie for Appellant.

Ralph E. Jenney, Loeb, Walker & Loeb and Milton II. Schwartz for Respondents.

BARNARD, P. J.—The California Land Buyers Syndicate was organized in June, 1926, for the purpose of buying real property in San Diego County with the intention of later selling the same at a profit. With the permission of the state corporation department one R. L. Stewart was appointed as the corporation's agent for the sale of stock at a commission of 20 per cent. A large amount of stock was sold and the corporation acquired some thirty-one separate properties. Stewart opened an office for the sale of

stock and the syndicate sublet from him a portion of that space, in which it conducted its business under an arrangement by which it allowed Stewart a certain sum each month to cover certain expenses. The syndicate had its own book-keepers and other employees, some of whom also worked for Stewart. The directors of the corporation held regular meetings and kept careful minutes. Any purchase of property was made only on the unanimous approval of the directors and after the property had been examined and appraised by each director. All papers in connection with each transaction were kept together and the directors were familiar with these and with the manner in which the books of account were kept.

The defendants, who were accountants, were employed to open up a set of books and thereafter from time to time to audit the books and report to the directors. Four such audits were made, the first on September 8, 1927, and the last on January 21, 1930. In addition, the defendants took a trial balance at the end of each three months and reported to the directors. These audits and reports all indicated the amount of the surplus at the respective dates as shown by the books of the corporation. A number of sales and exchanges of lands were made, all of which were entered on the books in accordance with values fixed by the board of directors. When a parcel was traded in on another property at a figure higher than its cost the difference was carried on the books as surplus, with the knowledge and approval of the directors. Dividends at 2 per cent were paid quarterly on the preferred stock from April 19, 1927, to and including June 30, 1929. On November 12, 1929, the syndicate closed its office and ceased operations. An auditor sent by the state corporation department made an examination early in 1930 and found no irregularities in the books and records of the corporation.

As stated by the appellant he ''seeks to recover on behalf of his bankrupt the funds withdrawn from its treasury through the frauds of Stewart; respondents having participated in these frauds are equally liable with Stewart in answering for the loss sustained''.

The complaint alleges that the respondents were employed by the syndicate to audit the corporation's books and accounts and submit to the directors annual reports as to the

corporation's financial condition and such other reports as might be requested; that the respondents did audit the books of accounts of the corporation and made reports of its financial condition as disclosed by those books and accounts from December, 1926, until November, 1929; that the respondents well knew that Stewart was the manager of said corporation, that he had control of the entire business of said corporation, that all books and records were in his exclusive charge, that all financial transactions were handled by him and that all audits and reports were required for the purpose of informing the board of directors of the actual condition of the corporation as disclosed by its books and accounts; that the respondents well knew that Stewart was engaged in a stock-selling campaign and that the continued payment of regular quarterly dividends of 2 per cent was essential to the continuance of this campaign; that the respondents submitted to the directors various audits and reports purporting to show that the corporation then had a surplus available for the payment of dividends; that these audits and reports were false and did not set forth the true condition of the corporation as disclosed by its books and accounts; that the respondents knew that these audits and reports were false and did not set forth the true condition of the corporation; that the board of directors, believing said audits and reports to contain a true and correct statement of the condition of the corporation as disclosed by its books and records, declared and paid various specified dividends; that at no time since its incorporation did the syndicate have any surplus for the payment of dividends; that the respondents knew that the books of the corporation disclosed this fact; that the respondents knew that these reports and audits were submitted to the directors for the purpose of inducing them to declare and pay dividends so that Stewart might continue his stock sales; that the board of directors relied and acted upon the information furnished by the defendants as to the conditon of said corporation; and that all payments of dividends were illegal and constituted an impairment of the capital of the corporation.

The defendants answered denying all of the plaintiff's charges and setting up several special defenses. After a trial the court found in all respects in favor of the defendants and this appeal is from the judgment which followed.

The appellant states that his right to recover a judgment herein "depends upon whether or not he has, by a preponderance of the evidence, established that approximately $68,000.00 of his bankrupt's assets have been unlawfully distributed among the Syndicate's preferred stockholders to its prejudice and the prejudice of its creditors, by the frauds and deceptions practiced upon the corporation by its fiscal agent and manager, R. L. Stewart, and those associated with him and that respondents, with guilty knowledge, aided and participated in such frauds and deceptions by suppressing all information in relation thereto while employed by the Syndicate as its auditors and by certifying in their audit reports and statements submitted to Syndicate to the truth and reality of transaction set up by false and fictitious entries in Syndicate's books and records made to conceal and cover the illegal and wrongful acts and conducts of Stewart and his associates''. ▮ The case was tried on the issue as to whether the defendants knowingly submitted false reports which deceived the directors and which caused them to declare dividends which could not be legally declared.

The court found, among other things, that it was not true that the sole source from which the corporation produced funds for the operation of its business was from the sale of shares of its capital stock; that Stewart had the exclusive right to sell stock for which he was paid a commission of 20 per cent; that with that exception it was not true that he had control of any of the business affairs of the corporation or that any of the records of the corporation were kept or maintained by him; that the stenographers and bookkeepers when engaged on the business and books of the corporation were the employees of its directors and said books, records and accounts were at all times kept and maintained by and under the control of the directors; that the directors hired Stewart to see that these accounts and records correctly reflected the transactions had or entered into by the company; that said books, records and accounts correctly reflected these transactions; that the directors were familiar with these books and knew how the same were being kept and maintained; that the respondents from time to time were employed by the directors to make, and did make, to them audit reports, trial balances and statements

reflecting the financial condition of the corporation as shown by its books and records; that the various audits and reports made by the respondents were neither false nor fraudulently prepared, and that each of the same correctly set forth the true condition of said corporation at the time the same was made; that it was not true that the corporation did not have a surplus at any time but that the corporation did have a surplus as shown by its books of account on the dates and in the amounts set forth in the various audits and reports; that the directors were familiar with the books and with the condition of the corporation and in ordering the various dividends to be paid did not rely upon the reports and audits submitted by the respondents; that it was not true that the respondents or any of them knew that any of the reports or audits was made or submitted for the purpose of inducing the directors to declare or to pay dividends so that Stewart might proceed with his stock sale or for the purpose of inducing anyone to do anything whatsoever for any purpose; that it was not true that any of the dividends paid were illegally declared or that by reason of any such payments the corporation has had its capital investment impaired or that by reason thereof it became or now is insolvent; that none of the letters, audits, reports or statements prepared by the respondents or submitted to the directors was false or fraudulent and that none thereof was made, prepared or submitted for any purpose except in good faith to furnish the directors, in compliance with the terms of their employment, with true and correct reports of the financial condition of the corporation for the period covered therein as shown by the books, accounts and records of the corporation; and that all of said audits and reports were faithfully and diligently made.

The transcript and the briefs are voluminous and it is a little difficult to follow the appellant's contentions. Disregarding immaterial matters, the gist of appellant's case is that Stewart rather than the directors was in actual control and direction of the business of the corporation, that Stewart sold stock in an illegal manner, claimed a fictitious profit on unsold real estate and deceived the directors by manipulating the books, that the respondents assisted Stewart in this deception by suppressing information and by falsely reporting the condition of the corporation, that this was in-

tentionally and knowingly done, that the directors, relying on these reports and being deceived thereby, declared dividends which were not warranted by the condition of the corporation, that the corporation was damaged, and that the respondents are liable therefor. The court found that Stewart was not in charge of the business of the corporation or of its books, that its transactions and business were conducted by the directors, that the directors were familiar with the books and the manner in which they were kept and with the facts in connection with each of the transactions, that the audits and reports were correctly made, and that the directors were not deceived by any of these reports and audits. These findings are fully sustained by the evidence and the appellant has failed to establish the facts which he admitted throughout the trial were essential to his recovery. Most of these findings and other material findings are not directly attacked, and the contention seems to be that the court should have drawn different conclusions. It is argued, however, that some of the findings are not supported by the evidence because, while the audits and reports correctly reflected the condition of the corporation as shown by its books, the respondents could have discovered through further investigation that the books did not show the actual situation, that stock was being sold in an illegal manner, and that profits supposedly accruing from the sales of real property were in fact nonexistent.

Several of these contentions relate to the theory of bookkeeping and accounting, and involve the question as to whether certain items were properly carried on the books as assets. All of the expert witnesses called by the respondents testified against the appellant's contentions in this regard and this testimony was confirmed, at least in part, by the appellant's own experts. Conceding that any conflict here appears the court's findings are sustained by a part, and apparently by a preponderance, of the evidence.

Appellant's main contention seems to be that stock in the corporation was exchanged for real estate in violation of the permit issued by the state corporation department and that when a parcel of real estate was exchanged for other property at a price in excess of its original cost, the difference was entered on the books as a profit before the second piece was sold. The matter last referred to represents an estab-

lished policy on the part of the directors, the books were thus kept on their order, and they were in no way deceived by anything done by the respondents in this connection. With respect to the other matter it appears that stock was, in effect, exchanged for real property. This was done by putting through escrows whereby the corporation's check was given in payment for the land and the other party's check was given in payment for the stock. While there is some evidence that certain papers in the files of the corporation indicated the true situation, although the same was not indicated by the books of the corporation, there is other evidence to the effect that this could not be learned from an examination of the books and records of the corporation, that it was unknown to the respondents except in one instance, and that in that case the respondents took the matter up with the attorney for the corporation who assured them that the matter was perfectly legal. It further appears that whatever illegality existed and whatever harm arose therefrom was caused directly by the action of the board of directors, and that all such exchanges were made with their full knowledge and consent and in accordance with their fixed policy, and no inference could be drawn that anything done by the respondents had any causal relation to any part of this situation.

Not only are the findings sustained by the evidence, but we are unable to see how the matters particularly relied upon by the appellant can justify or compel any other conclusions than those drawn by the court. Conceding that certain sales of stock were illegally made this was not only well known to the directors but was intentionally done by them. They were not only not deceived by the audits and reports but they had intentionally handled the transactions in such a manner as to make them appear on the books as a cash transaction. While the court found upon sufficient evidence that the respondents had no knowledge of those parts of these transactions which had been thus covered up and conceding, for the sake of argument, that the respondents might have found out the true situation by a more extensive investigation, it in no way appears that any discovery they might have made would have affected the result. The method pursued by the directors was followed on the advice of their attorneys and although the same has since been declared illegal, no such

blame can be attached to the respondents, under the circumstances here appearing, as would justify a reversal of the judgment.

Some contention is made that the trial court committed prejudicial error in limiting the appellant's cross-examination of a certain witness. The cross-examination of this witness takes up more than a thousand pages of the transcript and it abundantly appears therefrom that the court did not abuse its discretion in this regard.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 22, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 23, 1936.