■ 1136 TENANTS' CORPORATION, Respondent, v. MAX ROTHENBERG & COMPANY, Appellant.— Order, entered August 25, 1966, denying defendant's motion to dismiss the complaint (summary judgment), affirmed, with $50 costs and disbursements to plaintiff-respondent. The record raises triable issues as to the scope and nature of defendant's engagement and as to the performance of its duties pursuant to such agreement. As the Special Term pointed out, each of the parties adduced evidence to support a markedly different version of the original oral retainer. The engagement of retainer consisted of conversations solely between Max Rothenberg, a partner in the defendant firm of certified public accountants, and I. Jerome Riker, plaintiff's managing agent, who subsequently pleaded guilty to embezzling approximately $130,000 of the plaintiff's funds. To support its version of the restricted scope of its engagement, defendant submitted copies of its financial statements to the plaintiff on which there appeared the legend "No independent verifications were undertaken thereon". It must be observed, nevertheless, that such legend was not annexed to the annual reports submitted to the plaintiff's shareholders for the purpose of State and Federal income tax deductions, wherein the defendant represented that interest on the mortgages and taxes had been paid, although in fact they were long past due. Moreover, even assuming that the defendant-appellant firm of certified public accountants acted as but a robot, merely doing copy work, a second issue of fact is evident as to the alternative basis of liability on its part, that is, whether "the wrongdoing involved either was known to the employee assigned to handle plaintiff's account, or, at the very least, suspicious actions by the agent became known to defendant and there thus arose the duty to inform the plaintiff of these factors." (Opinion of the Special Term.) Another factor in this latter connection, might be the fact that the defendant was supplying like accounting services for all of Riker's co-operatives, which might have put it upon inquiry as to whether it was being used by Riker to hide his defalcations. The question of whether the defendant-appellant in performing its duties under its contract adhered to accepted standards of professional competence is not subject to summary disposition. (*National Sur. Corp.* v. *Lybrand,* 256 App. Div. 226.) Concur — Botein, P. J., Tilzer and Rabin, JJ.; Steuer and Witmer, JJ., dissent in the following memorandum: We dissent and would

reverse the order below and grant the motion for summary judgment dismissing the complaint. The plaintiff sues to recover losses sustained by virtue of alleged negligent performance by the defendant of its oral contract to do accounting work for the plaintiff. The motion was made after the plaintiff had completed its examination before trial of the defendant. The affidavits and examination before trial upon which this motion rests show that the plaintiff orally employed defendant firm of accountants to "write up" its books from statements and facts submitted from time to time to the defendant by plaintiff's managing agent, Riker; and defendant made periodic reports thereof in regular accounting form to the plaintiff and its stockholders. The agreement was that the defendant should do the accounting work just as plaintiff's prior accountants, Robert Simons & Co., had done; and defendant was paid therefor the sum of $600 annually, as its predecessor had been paid. It appears that plaintiff's managing agent, Riker, mishandled and misappropriated plaintiff's funds; and gave misinformation to the defendant for use in preparing its periodic financial statements. The only issue on this motion is whether the plaintiff has shown that a question of fact exists as to the nature of defendant's duty to the plaintiff under its oral contract of employment; for defendant admits plaintiff's assertions that Riker's reports to defendant were false, that plaintiff's original records were available to the defendant, that Riker commingled funds of plaintiff with those from other properties he managed, that defendant did not check the accuracy of Riker's reports to it, and that a formal complete audit of plaintiff's books would have revealed readily Riker's defalcations. Despite its examination before trial of the defendant, plaintiff shows nothing in its papers to indicate a likelihood that upon a trial it can produce evidence to create a question of fact that the defendant had a duty to do more than it did. On the other hand, defendant points out that the report of its predecessor to the plaintiff for the year 1962, and the reports which defendant made to the plaintiff for the year 1963 and for the first and second quarters of 1964, prior to the discovery of Riker's misconduct, expressly stated that, "pursuant to our engagement", the reports were based upon information furnished to the defendant by plaintiff's managing agent, that no independent verification thereof was made, and no opinion was expressed as to the correctness of the financial condition indicated thereby. Defendant asserts that the plaintiff got what it paid for, and that despite the invariable notices of the limits of the services performed, defendant was not asked or employed to do more. It is recognized that plaintiff is handicapped in that its proof must be obtained largely through Riker and the defendant, and that the remedy of summary judgment in such cases should not be granted when the plaintiff shows some possibility of proving a case. This, however, it has not done.