**Leo SHAPIRO, as Trustee in Proceedings for the Reorganization of Beck Industries, Inc., under Chapter X of the Bankruptcy Act, Plaintiff,**

v.

**Newton GLEKEL et al., Defendants.**

**No. 73 Civ. 2324 (JMC).**

United States District Court,
S. D. New York.

June 28, 1974.

---

Shea, Gould, Climenko & Kramer, New York City (Ralph L. Ellis, New York City, of counsel), for plaintiff.

Davis, Polk & Wardwell, New York City (Robert B. Fiske, Jr., Bartlett H. McGuire, Stephen D. Hoffman and Rhea Kemble Neugarten, New York City, of counsel), for defendant Ernst & Ernst.

## MEMORANDUM DECISION

CANNELLA, District Judge.

Defendant Ernst & Ernst's motion, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for an order granting it judgment on the pleadings dismissing Count IV of the instant complaint, or, in the alternative, for partial summary judgment, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, dismissing Count IV as against it, is denied.

Count IV of the complaint asserts that as a result of Ernst & Ernst's negligent performance of its auditing and accounting contract, Beck Industries, Inc. [hereinafter "Beck"] was allowed to overstate its earnings and financial condition in certain financial statements, and that these errors caused the financial demise of Beck and Beck's petition for reorganization under Chapter X of the Bankruptcy Act. In essence, plaintiff alleges that Ernst & Ernst is liable to Beck, because Beck's financial statements for 1968 and 1969 were inaccurate and because the accountants negligently failed to detect such inaccuracies and report them to Beck's Board of Directors. It is further claimed that the accountants' failure to determine and report the true financial condition of Beck renders them legally responsible to the trustee for permitting the Beck directors to engage in an ill-advised program of acquisitions. These claims against Ernst & Ernst are predicated upon both negligence and breach of engagement theories.

On the instant motion, movant asserts that the plaintiff, by his statements in the pleadings, has conceded that the President and the Chairman of the Executive Board of Beck knew or should have known that Beck's earnings were materially less, and its financial condition was materially worse, than that represented in the financial statements and, therefore, that such knowledge and negligence on the part of Beck's two top officers precludes the trustee, who stands in the shoes of Beck, from suing the accountants for their negligence in permitting the overstatements in the financial reports to occur. Ernst & Ernst point to the following matters as supportive of their thesis: (1) that the President and Executive Committee Chairman of Beck (Messrs. Glekel and McDevitt) were aware or should have been aware of the fact that Beck's financial condition was materially worse than that reported in the financial statements; (2) that all the directors of Beck, "except defendants Glekel and McDevitt, were misled into believing that Beck was prospering, whereas it was not"; and (3) that the majority of Beck's directors, "except for defendants Glekel and McDevitt, and others, would have known of Beck's true financial condition" had Ernst & Ernst properly performed its duties. In short, movant argues that assuming, as it must, the truth of the allegations made in the complaint, a recovery against Ernst & Ernst is here precluded as a matter of law because Beck was itself contributorily negligent and that, in any event, any negligence on the accountants' part was not, as a matter of law, the proximate cause of Beck's losses.

## CONTRIBUTORY NEGLIGENCE

In support of its position that the negligence of the employer precludes recovery against the accountants, Ernst & Ernst places reliance upon Craig v. Anyon, 212 App.Div. 55, 208 N.Y.S. 259 (1 Dept.1925), aff'd without opinion, 242

N.Y. 569, 152 N.E. 431 (1926), and a line of cases which have apparently, albeit not exclusively, embraced the rationale of that case. Social Security Administration Baltimore Federal Credit Union v. United States, 138 F.Supp. 639 (D.Md.1956); Delmar Vineyard v. Timmons, 486 S.W.2d 914 (Tenn.Ct.App. 1972); Cereal Byproducts Co. v. Hall, 8 Ill.App.2d 331, 132 N.E.2d 27 (1 Dist. 1956); International Laboratories, Ltd. v. Dewar, [1933] 3 D.L.R. 665 (Manitoba Ct.App.). In Craig v. Anyon plaintiffs, a firm of stock and commodity brokers, were defrauded of more than $1,250,000 over a period of about five years by an employee (Moore) who was in charge of plaintiffs' commodities department. Plaintiffs brought suit on the theory that the accountants had negligently conducted an audit of plaintiffs' books, asserting that a proper audit would have uncovered the falsification of the books, led to the discharge of Moore, and prevented further losses. In affirming the trial court's reduction of the jury's verdict to the amount which had been paid to the accountants as compensation for their services, the Appellate Division, First Department, stated:

[Moore's] various and diverse duties and powers put him in a position to keep records and papers, or cause them to be kept so as to deceive the accountants who relied on them. If it be assumed that they should not have done so, it is nevertheless true that the plaintiffs also relied upon them to an extent beyond all reason in view of the circumstances. They were guilty of the same kind of negligence of which they now complain. It may be true that a proper accounting would have put the plaintiffs on guard with reference to Moore's wrongdoing, but it is also true that, if the plaintiffs had attended to their business and, in view of the large transactions involved, had looked up Zabriskie's account when payments were being made to it, the dishonesty of Moore would have been discovered.

.    .    .    .    .    .

There is no doubt in this case that plaintiffs could have prevented the loss by the exercise of reasonable care and that they should not have relied exclusively on the accountants.

We think the damages cannot be said to flow naturally and directly from defendants' negligence or breach of contract. Plaintiffs should not be allowed to recover for losses which they could have avoided by the exercise of reasonable care.    .    .    .

.    .    ..    .    .    .

The plaintiffs in effect contend that defendants are chargeable with negligence because of failure to detect Moore's wrongdoing, wholly overlooking the fact that, although they were closely affiliated with Moore, who was constantly under their supervision, they were negligent in failing properly to supervise his acts, or to learn the true condition of their own business and to detect his wrongdoing.

212 App.Div. at 63–67, 208 N.Y.S. at 266–269. By a parity of reasoning, movant here asserts that the conduct of Messrs. Glekel and McDevitt and their knowledge of Beck's true financial position is similarly preclusive of a recovery against the accountants in this litigation.

Plaintiff, on the other hand, in support of the position that a recovery against the accountants is not barred by the acts alleged to have been committed by Messrs. Glekel and McDevitt, places primary reliance upon the subsequent Appellate Division, First Department decision in National Surety Corp. v. Lybrand, 256 App.Div. 226, 9 N.Y.S.2d 554 (1 Dept.1939). In that case, the defendant accountants were charged with negligence in failing to discover that Halle & Stieglitz, members of the New York Stock Exchange, had, for several years, been subject to embezzlements by their cashier. To this claim, the accountants asserted a defense of contributory negligence, offering evidence "that Halle & Stieglitz so conducted their business as to make possible [the cashier's] defalca-

tions." In reversing the trial court, which had barred plaintiff's claim in reliance upon Craig v. Anyon, the Appellate Division stated:

> We are . . . not prepared to admit that accountants are immune from the consequences of their negligence because those who employ them have conducted their own business negligently. . . . Accountants, as we know, are commonly employed for the very purpose of detecting defalcations which the employer's negligence has made possible. Accordingly, we see no reason to hold that the accountant is not liable to his employer in such cases. *Negligence of the employer is a defense only when it contributed to the accountant's failure to perform his contract and to report the truth.* . . . That was the principle applied in Craig v. Anyon . . . where the embezzler had been negligently represented to the accountants as a person to be trusted. In the present case, the loss consisted of thefts by a cashier not so represented "whose own account of his receipts and payments could not reasonably be taken by an auditor without further inquiry." [Emphasis added]

256 App.Div. at 235–236, 9 N.Y.S.2d at 563. The trustee contends that this narrower, more restrictive formulation of the contributory negligence defense, as it was expressed by the court in *Lybrand*, is here applicable and, he asserts that viewing the conduct of Messrs. Glekel and McDevitt in a light most favorable to plaintiff, such cannot be said to have contributed to the accountants' failure to perform their contract and to report the truth.

Ernst & Ernst, of course, does not agree with this analysis, contending instead, first, that *Lybrand* adopts a position not supported by the weight of authority and that the proper rule is that found in *Craig v. Anyon;* and, second, assuming *arguendo* that *Lybrand* is here found controlling, the facts of the instant case demonstrate negligence on the part of Beck's officials sufficient under that standard.

The later cases, both in New York and elsewhere, do not attempt to clarify the apparent conflict between *Craig v. Anyon* and *Lybrand* or to reconcile their holdings. Indeed, these cases have been cited, perhaps erroneously, for the same legal proposition. *See, e. g.*, Social Security Administration Baltimore Federal Credit Union v. United States, *supra*, 138 F.Supp. at 660. Nor has the community of legal scholars evidenced any substantial desire to comment upon the matter at bar or attempted to formulate a more uniform rule.[1] The Court has, however, discovered an article by one commentator, Professor Carl S. Hawkins, in which the Professor, in thoughtful and lucid discourse, analyzes the subject of contributory negligence in the present context. Hawkins, Professional Negligence Liability of Public Accountants, 12 Vand. L. Rev. 797, 809–11 (1959). In this work, the entire relevant text of which is set out in the margin,[2] the Court finds guidance for the decisional process.

---

1. An annotation on this subject, entitled Liability of Public Accountant, does appear at 54 A.L.R.2d 324.

2. Hawkins—Special Defenses:

Apart from the obvious defenses of no negligence, no damage, or no causal relation, there are several additional defenses which involve special problems.

Probably the most interesting of these is the question of contributory negligence. The few times it has arisen it has been in cases involving defalcations by the client's employee. The client claims loss resulting from the accountant's negligence in failing to detect the embezzlement, and the accountant asserts contributory negligence in the loose way in which the client carried on his business, thereby allowing the defalcations to occur.

Paradoxically enough, the first court to apply the defense of contributory negligence in such a case, conceived the action as being for breach of contract. The New York Court of Appeals in Craig v. Anyon accepted the jury's finding of negligence against the accountant, but nevertheless limited the plaintiff to recovery of compensation paid to

Professor Hawkins begins his analysis with a review of the facts and rationales of both *Craig v. Anyon* and *Lybrand*, indicating that the result reached in the former "was based upon the court's questionable conception of contract rules respecting remoteness of damage. . . .", *id.* at 809–810, and stating his preference for the latter in these terms:

> This case [*Craig v. Anyon*] has never been overruled but its significance is

the accountants, holding that plaintiff could not recover for the losses due to failure to discover the defalcations.

The result was based upon the court's questionable conception of contract rules respecting remoteness of damage. And yet it held that plaintiff could not have a recovery, beyond the contract price, among other reasons, because the plaintiff had been contributorily negligent in trusting too much to the dishonest employee and not checking up on him more closely. The case has never been overruled, but its significance is very doubtful, first because of its curious confusion of tort and contract principles, and second because of the qualifying distinction suggested in a later New York case, National Sur. Corp. v. Lybrand. This was likewise an action to recover losses resulting from the accountants' failure to discover defalcations. The clerk who had been embezzling funds had unfettered control over their disposition, and so the trial court held that plaintiff was barred, applying the principles of Craig v. Anyon. The Appellate Division reversed, holding that the question of contributory negligence should have gone to the jury, limited, however by this significant language:

> We are . . . not prepared to admit that accountants are immune from the consequences of their negligence because those who employ them have conducted their own business negligently . . . . Accountants, as we know, are commonly employed for the very purpose of detecting defalcations which the employer's negligence has made possible. Accordingly, we see no reason to hold that the accountant is not liable to his employer in such cases. *Negligence of the employer is a defense only when it has contributed to the accountant's failure to perform his contract and to report the truth.* . . . That was the principle applied in Craig v. Anyon . . . where the embezzler had been negligently represented to the accountants as a person to be trusted.

Some have argued that contributory negligence never should have been applied in professional malpractice cases. If the action was for breach of contract, recovery could not be defeated on the basis of contributory fault in relying upon performance. Just because remedy is sought in the alternative form of tort, it should not be forgotten that the essence of the wrong is breach of contract. The treatment of these cases in tort, it is argued, probably springs from their resemblance to the ancient action on the case for misfeasance in applying a common calling in the handling of another's goods or property, or from a kind of mechanical jurisprudence that equated the contract undertaking to perform with ordinary skill to the duty of ordinary care in negligence cases. But the consequences of violating the duty, which is imposed only by reason of the contract should be the same whether the action is in contract or tort, which means there is no place for contributory negligence.

These are persuasive arguments, but it seems to me that they go too far in trying to establish the contract as the basis of duty. It is true that the contract usually brings the parties into the relationship which causes the law to impose a duty. But in the final analysis the duty in tort does not arise from the agreement of the parties, but rather from the thing that the defendant has undertaken to do with relation to the plaintiff's interests. Thus if the defendant refused to perform the agreement and never started the audit, there could be no action in tort though there would be in contract. Yet the duty to take care in tort would be fully effective if the undertaking, once commenced, had been wholly gratuitous, there being no contract for lack of consideration.

The existence of the contract does not change the elements of the tort cause of action. So to be consistent, I suppose the possibility of contributory negligence must be accepted, if the action is in tort. But contributory negligence is a failure to use reasonable care in looking after one's own interests in the circumstances. And here one of the circumstances is that the plaintiff has engaged defendant to help protect his interests. There can be nothing unreasonable about plaintiff's conducting his affairs on the assumption that defendant is doing his job properly. It should not be possible to base contributory negligence on a failure to take affirmative protective measures in reliance upon defendant's faithful performance. The New York Appellate Division probably had the right idea. That is, contributory negligence must be accepted as a theoretical defense, but it applies only if the plaintiff's conduct goes beyond passive reliance and actually affects defendant's ability to do his job with reasonable care.

12 Vand.L.Rev. at 809–811.

very doubtful, first because of its curious confusion of tort and contract principles, and second because of the qualifying distinction suggested in a later New York case, *National Sur. Corp. v. Lybrand.*

*Id.* at 810. Then, after first presenting the arguments on both sides of the question of the applicability of contributory negligence to cases brought against accountants, Mr. Hawkins concludes his discourse with the assertion of a thesis not unlike that expressed by the Court in *Lybrand.*

> The existence of the contract does not change the elements of the tort cause of action. So to be consistent, I suppose the possibility of contributory negligence must be accepted, if the action is in tort. But contributory negligence is the failure to use reasonable care in looking after one's own interest in certain circumstances. And here one of the circumstances is that the plaintiff has engaged defendant to help protect his interest. There can be nothing unreasonable about plaintiff's conducting his affairs on the assumption that defendant is doing his job properly. It should not be possible to base contributory negligence on a failure to take affirmative protective measures in reliance upon defendant's faithful performance. The New York Appellate Division [in *Lybrand*] probably had the right idea. That is, contributory negligence must be accepted as a theoretical defense, but it applies only if the plaintiff's conduct goes beyond passive reliance and actually affects defendant's ability to do his job with reasonable care.

*Id.* at 811.

■ Mindful of Professor Hawkins' analysis, the Court is convinced that the correct rule of contributory negligence applicable in accountant's liability cases, such as at bar, is that expressed in *Lybrand,* namely, that the "[n]egligence of the employer is a defense only when it has contributed to the accountant's failure to perform his contract and to report the truth. . . ." and that this rule must be followed here.

■ In addition, the Court finds significant policy considerations which are supportive of this approach. Accountants should not be allowed to avoid liability resulting from their own negligence except upon a showing of substantial negligence or fault by their employer—the *Lybrand* showing, at least. This view is particularly appropriate when, as here, public investors are involved and the accountants have been retained because of their professional standing and expertise. As was stated by Justice Clarke, speaking in dissent in *Craig v. Anyon:*

> The contract of audit was not one merely to discover if inadvertent clerical errors had been made in the bookkeeping, but was one of protection of the plaintiffs' firm from their own failure to find any error in their books of account. This contract the defendants failed to perform. Admitting the neglect of the plaintiffs to discover the embezzlement and falsification of the accounts through an examination of the books on their own part, the defendants' work in pursuance of the contract, owing to the manner in which it was performed, failed to save plaintiffs from the consequences of such failure and neglect, which was the very subject of the contract.

208 N.Y.S. at 269–270.

■ Applying the above-stated principles to the matter at bar, the Court, viewing the facts in a light most favorable to the plaintiff, cannot conclude, as a matter of law, that the conduct of Messrs. Glekel and McDevitt "contributed to the accountant[s'] failure to perform [their] contract and to report the truth" and, therefore, that aspect of the instant motion which seeks relief on grounds of contributory negligence is denied.

### PROXIMATE CAUSE

■ Turning next to Ernst & Ernst's assertion that, in any event, its negligence was not the proximate cause of the losses sustained by and the financial demise of Beck, the Court need only be

brief. In the opinion of this Court, such issue is properly reserved to the finder of fact upon a plenary trial. Summary disposition is not warranted where, as here, disputed questions of fact are present. Indeed, both of the cases relied upon by movant in support of this aspect of their motion involve determinations made after trial. Stanley L. Bloch, Inc. v. Klein, 45 Misc.2d 1054, 258 N.Y.S.2d 501 (Sup.Ct., N.Y.1965); Flagg v. Seng, 16 Cal.App.2d 545, 60 P. 2d 1004 (4th Dist.1936); *compare,* Maryland Cas. Co. v. Cook, 35 F.Supp. 160 (E.D.Mich.1940); 1136 Tenants' Corp. v. Max Rothenberg & Co., 27 A.D. 2d 830, 277 N.Y.S.2d 996 (1 Dept.1967), aff'd mem., 21 N.Y.2d 995, 290 N.Y.S.2d 919, 238 N.E.2d 322 (1968). In short, then, the Court does not now rule upon defendants' position that they did not proximately cause the losses sued for, other than to state that the resolution of such issue is properly reserved to the trier of fact at trial.

## CONCLUSION

For the reasons above stated, the motion by defendant Ernst & Ernst for the entry of an order dismissing the complaint as against it or, in the alternative, for the entry of partial summary judgment in its favor, is denied.

So ordered.