**Cereal Byproducts Company, Appellant, v. Roy Hall, J. Leonard Penny, et al., Appellees.**

Gen. No. 46,622.

First District, First Division.
January 9, 1956.
Rehearing denied February 1, 1956.
Released for publication February 27, 1956.

Norman, Engelhardt, Zimmerman & Prince, of Chicago, for appellant; Harold W. Norman, and William R. Engelhardt, both of Chicago, of counsel.

■■■■■■■■■■■■

Lord, Bissell & Brook, of Chicago, for appellees; Gordon R. Close, and Richard E. Mueller, both of Chicago, of counsel.

JUDGE NIEMEYER delivered the opinion of the court.

Plaintiff appeals from a judgment for defendants entered after trial by the court without a jury in its action for damages resulting from the alleged negligence of defendants, certified public accountants, in auditing the books of plaintiff for the year 1947.

From the year 1932 through 1949 the accounting firm in which the defendants are the present partners made an annual audit of plaintiff's books and prepared its federal income tax returns. From 1936 the defendant Penny was in charge of these audits. From March 1941 to and including February 1949 R. C. Zastrow was bookkeeper for plaintiff, in charge of the book accounts and supervising the writing of checks. The audit for 1948 was delayed by Zastrow, who said that he was not ready. Penny contacted Becker, president of plaintiff, about this delay between February 15th and 20th, 1949 and arrangements were made to start the audit in a couple of days. February 24th Becker was informed by the bank that plaintiff's account was overdrawn. He inquired of Zastrow, who said nothing. He thereupon contacted Penny, who sent a field man to plaintiff's office on Saturday, February 26th. The following Monday the auditors informed Becker there was some defalcation or embezzlement. Zastrow did not appear at plaintiff's offices after Saturday, and within a week committed suicide.

Defendants completed the audit, finding embezzlement and defalcations by Zastrow of $15,414.32 in 1947, $66,645.05 in 1948, and $13,620.21 in 1949 by means of checks eventually shown as payable and paid to Zastrow either by changing the name of the payee on the check to his name or by influencing an authorized

332

signing officer to sign blank checks in which his name was subsequently inserted. The chief assistant to Zastrow paid plaintiff $7,252.60, which she said she had supposed was horse race winnings but then felt belonged to plaintiff. Plaintiff also recovered $19,500 from its bank on account of payments by it on checks payable to Zastrow. In 1950 plaintiff was advised that a proper audit of its books for 1947 would have revealed Zastrow's defalcations. It then brought suit for $66,333.03, its net loss after giving credit for recoveries hereinabove mentioned and for defendants' counterclaim for compensation for services to plaintiff in 1950.

Plaintiff charged breach of contract and negligence and carelessness in the audit. Defendant admitted the amount of defalcations hereinbefore stated, denied any negligence or carelessness in its audits, charged plaintiff with contributory negligence, and asserted affirmatively that plaintiff's settlement with its bank released the defendants of all liability and that the payment by plaintiff to defendant of $1,600 for their services in 1949 constituted an accord and satisfaction of plaintiff's claim. In stating the reasons for its decision the trial court found that plaintiff did not prove negligence of the defendant, and rejected the defense of contributory negligence. No reference was made to the affirmative defenses.

Defendants were employed to make an annual audit of plaintiff's books and to prepare its federal income tax returns. The report of the audit for the year 1947 entitled "Accountants' Detailed Report for the Year Ended December 31, 1947" described the work performed by defendants, and stated:

"We have examined the balance sheet of Cereal By-products Company as of December 31, 1947, and the statements of income and surplus for the year then ended, have reviewed the system of internal control and the accounting procedures of the company and,

333

without making a detailed audit of the transactions, have examined or tested accounting records of the company and other supporting evidence, by methods and to the extent we deemed appropriate. Our examination was made in accordance with generally accepted auditing standards and included all procedures which we considered necessary in the circumstances.

"In our opinion, the accompanying balance sheet and related statements of income and surplus present fairly the position of Cereal Byproducts Company at December 31, 1947, and the results of its operations for the year, in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding year."

Five certified public accountants, including the defendant Penny, testified as experts—three for plaintiff and two for defendants. As stated in plaintiff's brief, the experts generally agreed that the objective of the ordinary examination in most cases is not to disclose defalcations but to render an opinion on the financial statements as audited by the accountant through following accepted auditing procedures. The experts further agreed that the actual steps to be taken in verifying the accuracy of the books and financial statements, etc., examined, rests to a great extent in the judgment of the man doing the work. They differ materially as to the particular steps that should be taken. This difference in the testimony of the experts produced an uncertainty in the mind of the trial court, stated by him as follows:

"I think I am left pretty much without anything as a yardstick to absolutely measure what was done or failed to be done in this case amounting to negligence."

Accordingly he found for defendant on the question of negligence.

Although the discovery of defalcations is not in most cases the objective of an ordinary examination of books, it is necessary that certain examinations or

334

checks be made which would show defalcations before the auditor could render an opinion on the balance sheets and financial statements as showing the worth of the firm whose books were examined. Defendants' experts agree that a proper audit requires an examination of sufficient evidentiary matter to afford a reasonable basis for the accountant's action. Unless a special audit is being made, as was done here after discovering that the bank account was overdrawn, and Zastrow's suicide, a detailed examination and check is not made or contemplated by the parties.

Plaintiff specifies six particulars in which it contends that defendant failed to exercise the care and diligence required for a proper audit of the kind it undertook to make for plaintiff. We shall refer to only one of these specifications—the conduct of defendants in the confirmation of accounts receivable, as to which the evidence is without contradiction. In the audits made by defendants for the year 1943 and following years the auditors sent out letters asking confirmation of certain brokerage accounts receivable. For the years 1943 to 1946, both inclusive, Becker asked Penny not to confirm certain accounts receivable specified by him. In making the audit for 1947, 29 accounts totaling $28,964 were listed as not to be confirmed. Becker had no knowledge of this list. Penny testified that the accounts were indicated by Zastrow; that as far as he, Penny, knew, Becker did not participate in that decision. Defendants sent bank confirmations to 31 accounts in that year, and if they had not received the instructions from Zastrow they would have sent confirmation to some of those 29 accounts. Their practice was to pick out accounts which had balances of significance in relation to the particular company's business and confirm some accounts with large balances and a few with small balances as a test. Zastrow's list includes not less than ten accounts which the subsequent

audit showed were overstated on the books on December 31, 1947.

Defendants seek to justify their acceptance of Zastrow's list of accounts not to be confirmed on two grounds: That Zastrow was present during the audits for 1944 and 1945 when Becker gave his list of accounts not to be confirmed, and, that Zastrow had become a stockholder of plaintiff. Neither ground is tenable. The mere presence of Zastrow when Becker gave a list of accounts not to be confirmed, implied no authority in Zastrow to give a list of his own making several years later. Zastrow's acquisition of stock gave him no authority in the direction and management of the business, as defendants must have known. Defendants were employed to audit the books kept by and under the direction of Zastrow. Acceptance of a list of accounts not to be confirmed prepared by him without the knowledge of Becker or other officer was inexcusable negligence for which defendants are liable. State Street Trust Co. v. Ernst, 278 N. Y. 104; Maryland Casualty Co. v. Cook, 35 F. Supp. 160 (1940).

The trial court did not err in rejecting the defense of contributory negligence. No fact or circumstance is cited contributing in the slightest degree to the negligence of defendants in making the audit. United States Cold Storage Co. v. Central Mfg. Dist. Bank, 343 Ill. 503, 519; National Surety Corp. v. Lybrand, 9 N.Y.S.2d 554, 256 App. Div. 226.

As the trial court failed to make a finding as to the affirmative defenses asserted by defendants, we cannot consider these defenses.

The judgment is reversed and the cause remanded with directions to find the defendants guilty of negligence in making the audit of 1947, and for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

FRIEND, P. J. and BURKE, J., concur.