THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT No. 508, County of Cook, Plaintiff-Appellee and Cross-Appellant, v. COOPERS AND LYBRAND, L.L.P., Defendant-Appellant and Cross-Appellee.

First District (1st Division)   No. 1—01—2947

Opinion filed July 29, 2002.

Jeffrey R. Tone, Linton J. Childs, Asheesh Goel, and David A. Gordon, all of Sidley, Austin, Brown & Wood, of Chicago, for appellant.

Reuben L. Hedlund, James W. Joseph, Erin H. Walz, and Sarah J. Deneen, all of Hedlund, Hanley, Koenigsknecht & Trafelet, and Freeborn & Peters, both of Chicago (Steven J. Roeder, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff City Colleges of Chicago (City Colleges) sued defendant Coopers & Lybrand, L.L.P. (Coopers), for professional negligence and

breach of contract resulting from an audit of City Colleges. The jury returned a verdict in favor of City Colleges for $23 million reduced by 45% for plaintiff's comparative negligence, and $378,000 for breach of contract. Coopers appeals claiming that: (1) City Colleges failed to prove causation; (2) it is entitled to a new trial because the trial court erred in instructing the jury and allowing improper witness testimony and the verdict was against the manifest weight of the evidence; and (3) in the alternative, it is entitled to a setoff for the full amount of a settlement between City Colleges and another auditor.

City Colleges cross-appeals alleging that this court must set aside the jury's verdict of contributory negligence and the damages verdict for the breach of contract claim.

We affirm.

## BACKGROUND

On November 10, 1992, City Colleges contacted Coopers and requested that it submit a proposal for auditing City Colleges' books. Coopers submitted a proposal that included a comprehensive audit for the fiscal years of 1993, 1994 and 1995. The audit proposal was customized for City Colleges and indicated Coopers' expertise in auditing governmental entities, especially colleges. The audit proposal specifically mentioned that "investments" would be included in its review; however, there were no details related to the procedures to be employed relative to the investments. City Colleges' fiscal year begins on July 1 and ends on June 30. On April 1, 1993, City Colleges' board of directors (Board) resolved that it would retain Coopers as its auditor for 1993 to 1995. Coopers began its field work in September of 1993 and completed its audit on or about October 15, 1993. Coopers issued and approved City Colleges' financial statements for the period beginning July 1, 1992, and ending June 30, 1993.

In February of 1994, the Board's chairman, Ron Gidwitz, testified that he was made aware of a "financial emergency" arising out of Dr. Philip Luhmann's investment practices. Dr. Luhmann was the treasurer appointed by the Board and later terminated as a result of his investing practices. The Board contacted Coopers, financial advisors, legal counsel and the Illinois Community College Board. After analyzing the financial emergency, City Colleges determined that Dr. Luhmann had violated City Colleges' investment policy. Dr. Luhmann had been engaging in a practice known as "pairing off" securities. When Dr. Luhmann paired off the securities, he purchased the security with the expectation that he could sell the security for a profit before he had settled its purchase. When the interest rates went down, the treasurer could repurchase the security at a profit. If the interest rates

increased, the treasurer would have to wait until the rates fell to a level that would allow him to complete the pair off. The investment policy of City Colleges was to hold securities to maturity to minimize interest rate risks. After discovering this investment practice, the Illinois Community College Board instructed City Colleges to sell the securities that did not comport with the investment policy as soon as it was prudent to do so.

City Colleges filed a complaint at law against Arthur Andersen, its previous auditor, and Coopers alleging that both auditors were professionally negligent and in breach of their respective contracts. The complaint stated that the auditors, *inter alia*, failed to detect and notify the Board of illegal, inappropriate and highly risky investments. The complaint further stated that if the auditors had exercised their duties of professional due care, they would have disclosed in their reports and advised the Board of the treasurer's activity. If so informed, the Board would have taken the necessary steps to bring the investments into compliance with the investment policy and avoid the losses suffered as a result of the policy violation.

Arthur Andersen settled with City Colleges prior to trial. Coopers elected to proceed to trial. At trial, City Colleges introduced evidence of Dr. Luhmann's investment policy violations and testimony from certain members of the Board indicating what action they would have taken had they been made aware of the violations. City Colleges also called experts that testified to the issue of damages suffered by City Colleges, professional negligence and breach of contract. Coopers presented evidence and testimony by experts to support its position relative to the damages, professional negligence and breach of contract. The trial lasted nearly a month.

At the conclusion of the trial, the jury returned a verdict in favor of City Colleges on the professional negligence count for $23 million. The jury also assigned negligence on behalf of the plaintiff at 45%, thereby reducing City Colleges' recovery to $12,650,000. The jury further found in favor of City Colleges on the breach of contract claim and awarded City Colleges $378,000.

## ANALYSIS

### I

The defendant claims that it is entitled to judgment *n.o.v.* because City Colleges failed to prove causation. In support of its claim, Coopers argues: (1) there was no competent evidence of proximate causation; (2) there was no competent evidence of loss causation; and (3) collateral estoppel precludes the jury from finding that Coopers' audit caused City Colleges' damages. In support of Coopers' first contention,

it claims that the limited testimony offered regarding causation was far too speculative to prove proximate causation. Specifically, Coopers cites the testimony of three members of the board of directors.

James Dyson testified at trial that had he been advised by Coopers that Dr. Luhmann was investing City Colleges' money in violation of the Board's policy, he would have made whatever changes that Coopers recommended. Ronald Gidwitz testified that if Coopers had informed him of Dr. Luhmann's investment practices, the Board would not have tolerated it and that it would have "cleared up" the situation. Terry Newman testified that he would have pursued any information that indicated improper investment by Dr. Luhmann.

■ When determining whether a directed verdict or a judgment *n.o.v.* is proper, the reviewing court must follow established standards. *Maple v. Gustafson*, 151 Ill. 2d 445, 453, 603 N.E.2d 508 (1992). A directed verdict or a judgment *n.o.v.* is properly entered in those limited cases where all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Maple*, 151 Ill. 2d at 453. In ruling on a motion for a judgment *n.o.v.*, a court does not weigh the evidence, nor is it concerned with the credibility of the witnesses; rather, it may only consider the evidence, and any inferences therefrom, in the light most favorable to the party resisting the motion. *Mizowek v. De Franco*, 64 Ill. 2d 303, 309-10, 356 N.E.2d 32 (1976).

■ In our view, the testimony as to proximate causation was not too speculative. The jury in this case heard the testimony of three members of City Colleges' Board and two former members of the Board. Michael Mayo was the chairman of the finance committee at the time of the Coopers audit and a former trustee. Ronald Grzywinski was the trustee responsible for the adoption of the Board's investment policy. Mayo, Grzywinski and the other members testified as to the action they would have taken if Coopers had indicated any deviation from the investment policy. Also, City Colleges presented evidence that it had acted on other issues brought to its attention by Coopers and made changes in areas such as its purchasing practices.

Coopers further argues that the "courts" have uniformly found the testimony of board members, in similar situations, insufficient to prove proximate causation, citing *In re Hawaii Corp.*, 567 F. Supp. 609, 627 (D. Haw. 1983), and *Drabkin v. Alexander Grant & Co.*, 905 F.2d 453, 456 (D.C. Cir. 1990). We note, however, that *In re Hawaii Corp.* was a bench trial where the trial court determined, as the finder of fact, that the testimony of the board in that case was unreliable. *In re Hawaii Corp.*, 567 F. Supp. at 627. We do not read that case as hold-

ing that such evidence is inadmissible. In the instant case, the jury determined that the testimony given by the Board was reliable. The *Drabkin* case is distinguishable because the auditor issued a "going concern" and the directors did not act even though reports of its tax problems appeared in the Wall Street Journal. During that trial, one director testified that the board *"could"* have declared bankruptcy earlier if it had known about a tax delinquency. (Emphasis in original.) *Drabkin*, 905 F.2d at 456-57.

Although this type of testimony is unusual, courts have allowed the testimony of board members as to what their actions would have been if auditors had informed them of certain inadequacies. See *Seafirst Corp. v. Jenkins*, 644 F. Supp. 1152, 1156-57 (W.D. Wash. 1986) (board members' declarations as to what actions they would have taken if auditors had notified them of inadequacies were sufficient admissible causation evidence); *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314, 1373 (S.D.N.Y. 1982) (directors' testimony stating what they would have done if auditors had properly reported basis for certain transactions was admissible); *United States v. Isaacs*, 493 F.2d 1124, 1162 (7th Cir. 1974) (affirming admissibility of Illinois Racing Board members' testimony regarding the steps they would have taken had they known of a concealed interest in certain matters). Coopers also argues that testimony by three Board members is insufficient to prove that the Board would have taken action and that the Board was aware of the investment policy violations and did nothing to stop them, and thus, a finding by the jury that the damages flowed from Coopers' audit is precluded. We disagree.

City Colleges put forth the testimony of the three board members in addition to Mayo and Grzywinski. The Board produced circumstantial evidence that it had previously taken action based upon suggestions given to City Colleges by Coopers in the course of its audit. City Colleges also offered testimony and evidence that as soon as the investment policy violation was discovered, immediate action was taken.

Relative to the loss causation issue, Coopers argues that there was no competent evidence of loss causation and that it was unreasonable for the jury to conclude that City Colleges' losses were foreseeable. Coopers relies on *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 60, 643 N.E.2d 734 (1994), for the proposition that a tort plaintiff must prove that he would not have suffered a loss if the facts were what he believed them to be or that the negligent conduct was in some reasonably direct, or proximate, way responsible for his loss. *Martin*, 163 Ill. 2d at 60. Coopers contends that two important facts undisputed at trial require that this court grant Coopers' request for judgment *n.o.v.* First, City Colleges engaged Coopers to audit its financial state-

ments until June 30, 1993, and second, City Colleges did not suffer any out-of-pocket losses on the investments it owned on that date. Coopers' argument is that the composition of City Colleges' portfolio substantially changed after the date on which Coopers was obligated to audit the investments, and, therefore, the losses were a result of the investment change and not negligence in conducting the audit. We disagree.

In our review of the record, we find that there was sufficient evidence for the jury to determine that Coopers' failure to detect the treasurer's violation of the investment policy, and City Colleges' not acting to correct the violation, could lead to the financial injury City Colleges alleges. The question of foreseeability of injury is a factual question for the jury to decide. *Blue v. St. Clair Country Club*, 7 Ill. 2d 359, 364, 131 N.E.2d 31 (1955); see also *Cereal Byproducts Co. v. Hall*, 8 Ill. App. 2d 331, 132 N.E.2d 27 (1956). Furthermore, the record indicates that Coopers specifically proposed that it would identify business risks and ensure that management acted upon such risks. Coopers' proposal to provide professional services states in pertinent part:

> "In detail, the principal elements of our audit approach are as follows:
>
> Risk Assessment and Planning. Our audit approach emphasizes the use of professional judgment. We continually monitor your operations and revise our audit strategy based on knowledgeable risk assessment. The approach provides assurance not only that your financial statements are accurate and provide a fair representation of your financial position, but that any business opportunities or risks are quickly identified and acted upon by management."

The jury determined that Coopers failed to comply with this provision. It is not unreasonable that a jury could similarly find that injury resulted from Coopers' failure.

■ Next, Coopers argues that collateral estoppel precludes the jury from finding that its audit caused City Colleges' damages. City Colleges filed a proof of claim in the United States Bankruptcy Court for the Southern District of Texas based on alleged securities violations against Westcap, the broker that sold the securities at issue to Dr. Luhmann. The bankruptcy court found for City Colleges and Westcap appealed. The court of appeals reversed and held that (1) Westcap's representations regarding profitability of bonds did not constitute material misrepresentation under Texas law; and (2) Westcap's failure to inform City Colleges that bonds were unsuitable for its portfolio and investment policy was not material because City Colleges had knowledge of the nature of the investments and the associated risk.

The doctrine of collateral estoppel precludes parties from relitigating issues that have already been resolved in earlier actions. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77, 744 N.E.2d 845 (2001). When determining if collateral estoppel applies, Illinois law requires that the trial court look to the law of the state where the first judgment was entered. *Mohn v. International Vermiculite Co.*, 147 Ill. App. 3d 717, 720, 498 N.E.2d 375 (1986). In the instant case, the state that entered the judgment was Texas.[1] Under Texas law, a party must show: (1) the facts sought to be litigated in the action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991).

We hold that Coopers has not established the elements necessary to invoke the doctrine of collateral estoppel. The facts sought to be litigated by City Colleges were not fully and fairly litigated. The issue City Colleges argued was that Coopers failed to inform the Board that the investments were in violation of City Colleges' investment policy. That issue differs from the issue decided in *In re Westcap Enterprises*, 230 F.3d 717, 732 (5th Cir. 2000). We do, however, note that the trial court was mistaken in its belief that since Coopers was not a party to the prior action, collateral estoppel cannot apply. The Texas Supreme Court has held that mutuality is not required for the invocation of the collateral estoppel doctrine, but, rather, it is only necessary that the party against whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation. *Eagle Properties*, 807 S.W.2d at 721.

We cannot say that all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors Coopers that no contrary verdict based on that evidence could ever stand. *Maple*, 151 Ill. 2d at 453.

## II

In the alternative, Coopers contends that it is entitled to a new trial if this court declines to order judgment *n.o.v.* Coopers offers the following four reasons supporting its entitlement to a new trial: (1) the trial court erroneously instructed the jury by describing the

---

[1]City Colleges brought suit against Westcap in the United States Bankruptcy Court. Westcap appealed to the United States District Court for the Southern District of Texas, where the judgment was affirmed. The Fifth Circuit Court of Appeals reversed and remanded the case for entry of judgment in favor of Westcap. Both parties agree that, for purposes of collateral estoppel, Texas law applies.

standard of care applicable to plaintiff's professional negligence claim under a statute that only applies to a nonparty; (2) the trial court erroneously admitted speculative and undisclosed testimony by City Colleges' witnesses; (3) the trial court erroneously refused to instruct the jury regarding the conclusive findings of the Fifth Circuit Court of Appeals in *Westcap*; and (4) the jury verdict was contrary to the manifest weight of the evidence.

The defendant argues that the trial court erred in giving a jury instruction related to a statutory violation applicable only to the defendant. The instruction given to the jury at trial reads in pertinent part:

> "There was in force at the time of the occurrence in question the investment policy of the City Colleges which provides as follows:
>
> One, duties of the treasurer: It shall be the treasurer's responsibility to determine and evaluate risk of investment alternatives as are permitted under this policy with due regard for prudent financial principals and practices, assess potential investments criteria of legality, financial risk, interest rate risk, liquidity and yield as so sequenced in the order of importance.
> \*\*\*
> If you decide that the *defendant failed to detect or notify the Plaintiff of violations* of these policies on the occasion in question, then you may consider that fact together with all the other facts and circumstance in evidence in determining whether and to what extent, if any, *Defendant was negligent under the claim of professional negligence*." (Emphasis added.)

Coopers contends that the instruction was improper because the instruction cited a provision that governed the conduct of the treasurer and should only be used as proof of his negligence. Second, Coopers claims that the instruction inappropriately describes the standard of care applicable to the defendant in the instant case.

■ The criterion used in determining proper submission of jury instructions is whether the instructions given, taken together, fully and fairly apprise the jury of the relevant principles. *Savage v. Martin*, 256 Ill. App. 3d 272, 284, 628 N.E.2d 606 (1993). The determination of proper jury instructions lies within the sound discretion of the trial court, and a reviewing court will not disturb the trial court's decision absent a clear abuse of that discretion. *Linn v. Damilano*, 303 Ill. App. 3d 600, 606-07, 708 N.E.2d 533 (1999).

■ Contrary to the defendant's assertion, the instruction, together with the provisions cited therein, fully and fairly apprised the jury of the relevant principles, especially in deciding what the defendant knew or should have known. See *Davis v. Marathon Oil Co.*, 64 Ill. 2d 380, 390-91, 356 N.E.2d 93 (1976), citing *Darling v. Charleston Com-*

*munity Memorial Hospital*, 33 Ill. 2d 326, 332, 211 N.E.2d 253 (1965). It is important that the jury understand the applicable policy provisions so that it may determine whether the auditor failed to detect a violation of the same. Furthermore, the instruction does not imply that the treasurer and the auditor were under the same duty of care. The language of the instruction clearly indicates that "[i]f [the jury] decide[s] that the *defendant failed to detect or notify the Plaintiff* of violations of [the] policies," then it may use that fact along with the other evidence to determine *"to what extent, if any, Defendant was negligent."* (Emphasis added.) The instruction, therefore, did not mislead the jury and cause it to apply an incorrect standard of care to the defendant.

■ Coopers also advances the argument that the trial court erroneously allowed improper witness testimony. Coopers takes issue with Mayo's testimony. Mayo served on the Board until August 6, 1993. On August 6, 1993, Coopers had neither completed its audit field work nor issued its audit report. Coopers complains that Mayo's testimony was irrelevant, lacked foundation and was speculative as to what he would have done if Coopers had reported violations of the investment policy to the Board. We disagree.

We find that Mayo had a sufficient basis to testify in light of his duties and experience as trustee of City Colleges and former chairman of the finance committee at the time of Coopers' audit. Evidence was adduced at trial that Mayo had a significant role in retaining Coopers to monitor compliance with City Colleges' investment policy. Also, relative to what action he would have taken, the record indicates that evidence was produced to show that the Board and Mayo had taken timely and appropriate action in past matters when advised by an auditor. Mayo's testimony was relevant, supported by the record and not speculative.

■ Coopers also argues that Dr. Lisette Cooper was allowed to testify outside her area of expertise regarding the hypothetical behavior and credibility of other witnesses. First, Coopers argues that Dr. Cooper should not have been allowed to opine as to what the Board would have done had it been informed of the policy violation. We note, however, that this opinion was disclosed in Dr. Cooper's written expert report prior to trial. The trial court came to the same conclusion and allowed the testimony. We also find it worthy of mention that the defendant had a full opportunity to cross-examine Dr. Cooper regarding her testimony and bring any weaknesses to the attention of the jury. In addition, Coopers claims that Dr. Cooper improperly testified as to the credibility of Dr. Luhmann's statements. Our review of the record reveals, and the trial court found, that Dr. Cooper's testimony

was not directed toward Dr. Luhmann's testimony, but was a response to counsel's argument that Dr. Luhmann had "lost track" of his investments.

■ The defendant argues that the trial court allowed undisclosed expert testimony to be admitted into evidence. Harvey Moskowitz, City Colleges' expert on accounting, testified that Coopers should have informed City Colleges that it did not intend to test City Colleges' compliance with its investment policies. This opinion was disclosed during discovery and Moskowitz gave his basis for arriving at that conclusion. At trial, Moskowitz expressed this opinion and referred to additional bases for support of his opinion. Coopers contends that an expert cannot offer a basis for an opinion that has not been disclosed before trial. See *Copeland v. Stebco Products Corp.*, 316 Ill. App. 3d 932, 946, 738 N.E.2d 199 (2000).

We, however, find that the defendant waived this issue. Moskowitz specifically and repeatedly offered the opinion and his bases earlier in the trial without objection from Coopers. Coopers has, therefore, waived this issue. *Uhrhan v. Union Pacific R.R. Co.*, 155 Ill. 2d 537, 545, 617 N.E.2d 1182 (1993). Furthermore, even if waiver did not apply, the record indicates that the opinion was disclosed by Moskowitz at the deposition. Additionally, the bases for the same opinion were disclosed in the deposition.

■ Coopers seeks a new trial, contending that the verdict was against the manifest weight of the evidence. A judgment is against the manifest weight of the evidence when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary or not based upon the evidence. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242, 665 N.E.2d 1260 (1996). In an appeal from a jury verdict, a reviewing court may not reweigh the evidence and substitute its judgment for that of the jury. *Barton v. Chicago & North Western Transportation Co.*, 325 Ill. App. 3d 1005, 1036, 757 N.E.2d 533 (2001). Based on the record, we hold that the trial court did not abuse its discretion by allowing the testimony of the expert witnesses. Also, the verdict was not against the manifest weight of the evidence.

■ Coopers also claims that this court should grant a new trial because the trial court refused to give an instruction that the facts of the *Westcap* case were entitled to collateral estoppel effect. However, we have concluded that Coopers has not satisfied the elements required to invoke the collateral estoppel doctrine. For the same reason, we conclude that Coopers is not entitled to an instruction regarding the facts determined in *Westcap*.

### III

■ Coopers claims, in the alternative, that it is entitled to a setoff

of the full amount of City Colleges' settlement with Arthur Andersen. Coopers cites the Joint Tortfeasor Contribution Act (the Act) (740 ILCS 100/2 *et seq.* (West 2000)). The Act provides:

"[W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them ***." 740 ILCS 100/2(a) (West 2000).

Coopers also cites *Patton v. Carbondale Clinic, S.C.*, 161 Ill. 2d 357, 372, 641 N.E.2d 427 (1994), for the proposition that joint tortfeasors are each liable for a single injury. City Colleges argues that Arthur Andersen inflicted an injury separate from Coopers' 1993 audit, namely, the negligent audit for 1991 and 1992.

■ The test for "jointness" is the indivisibility of the injury. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 438, 593 N.E.2d 522 (1992). Section 433A of the Restatement (Second) of Torts states:

"(1) Damages for harm are to be apportioned among two or more causes where

(a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more causes." Restatement (Second) of Torts § 433A (1965).

■ In our view, the harm can be divided into separate portions: the injury resulting from the 1991 and 1992 failure to detect noncompliance with the investing policy, for which Arthur Andersen was responsible, and the failure to detect the same in 1993 by Coopers. Each separate harm inflicted financial injury upon City Colleges.

The question of whether the settlement agreement properly allocated the separate harm in the instant case is essential to determining whether Coopers is entitled to a setoff in the amount of Arthur Andersen's settlement. In the *Patton* case, our supreme court determined that the Act applies to " 'one or more persons liable in tort,' " regardless of whether the liability is joint. *Patton*, 161 Ill. 2d at 368, citing *Doyle v. Rhodes*, 101 Ill. 2d 1, 12, 461 N.E.2d 382 (1984). Thus, the Act applies to not only joint tortfeasors, but to concurrent and successive tortfeasors as well. The question to be answered now is whether City Colleges distinguished between the injury arising from the Arthur Andersen audit and that which arose from the Coopers audit. *Patton*, 161 Ill. 2d at 369. The record demonstrates that City Colleges distinguished between the two injuries. The complaint and the settlement agreement indicate the injury assigned to Arthur Andersen relates to the audits of fiscal years 1991 and 1992. The

injury assigned to Coopers relates to the 1993 fiscal year audit. We hold that Coopers is not entitled to a setoff in this case.

## City Colleges' Cross-Appeal

### I

City Colleges contends that the issue of contributory negligence was only properly submitted to the jury for purposes of showing that City Colleges interfered with Coopers' audit. City Colleges also claims that the trial court erred because it allowed the jury to consider contributory negligence as to the safeguarding of City Colleges' property, *i.e.*, the investment portfolio. Coopers contends that the court erred by not allowing the jury to fully consider the issue of City Colleges' negligence in dealing with its affairs, specifically, its supervision of Dr. Luhmann and its knowledge of his risky investments.

The issues raised in the instant case require this court to determine whether the rule espoused in *National Surety Corp. v. Lybrand*, also known as the audit interference doctrine, is the law in Illinois. See *National Surety Corp. v. Lybrand*, 9 N.Y.S.2d 554, 563, 256 A.D. 226, 235 (1939) (holding that negligence of an employer that hires an accountant to audit his business is only a defense when it has contributed to the accountant's failure to perform his contract and to report the truth).

City Colleges argues that this court should apply the rule in *National Surety* because an auditor should not be allowed to assert as negligence the conduct that it specifically undertook to identify and correct on behalf of the client. City Colleges relies on *Cereal Byproducts Co. v. Hall*, 8 Ill. App. 2d 331, 336, 132 N.E.2d 27 (1956), wherein this court applied the rule in *National Surety* holding that contributory negligence could not by asserted by the auditor when there was no evidence that the client interfered with the audit. *Cereal Byproducts*, 8 Ill. App. 2d at 336. City Colleges also cites *Holland v. Arthur Andersen & Co.*, 127 Ill. App. 3d 854, 867, 469 N.E.2d 419 (1984), wherein this court described the *National Surety* rule as "sound reasoning," and cited *Shapiro v. Glekel*, 380 F. Supp. 1053, 1058 (S.D.N.Y. 1974).

In *Shapiro*, the federal district court held that the negligence of the employer of the accountant is a defense only when that negligence has contributed to the accountant's failure to perform his contract and report the truth. *Shapiro*, 380 F. Supp. at 1058. In the *Holland* case, this court held that, although *Shapiro* was not controlling, it was sound reasoning to hold an accounting firm to its contractual obligations and that, absent an intervening circumstance that prevents the firm from properly performing its duties, such as the employer's own misconduct, the accounting firm must so perform. *Holland*, 127 Ill. App. 3d at 867.

Coopers contends that the *National Surety* rule does not apply under Illinois law and that it is entitled to present a defense of contributory negligence as any other tort defendant might. Coopers cites to the Illinois Public Accounting Act (the Accounting Act), section 30.2, which provides:

"Contributory fault. Except in causes of action based on actual fraud or intentional misrepresentation, the principles of liability set forth in Sections 2—1115.05, 2—1116, and 2—1117 of the Code of Civil Procedure shall apply to all claims for civil damages brought against any person, partnership, corporation, or any other entity certified, licensed, or practicing under this Act, or any of its employees, partners, members, officers, or shareholders that are alleged to result from acts, omissions, decisions, or other conduct in connection with professional services." 225 ILCS 450/30.2 (West 2000).

Section 2—1116(c) of the Code of Civil Procedure (Code) provides:

"In all actions on account of death, bodily injury or physical damage to property in which recovery is predicated upon fault, the contributory fault chargeable to the plaintiff shall be compared with the fault of all tortfeasors whose fault was a proximate cause of the death, injury, loss, or damage for which recovery is sought. The plaintiff shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought. The plaintiff shall not be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought, but any economic or non-economic damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff." 735 ILCS 5/2—1116(c) (West 2000).

According to Coopers, the principles of liability set forth in the Code, adopted by the Accounting Act, require that the plaintiff "shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought." 735 ILCS 5/2—1116(c) (West 2000). Furthermore, the adoption of modified comparative negligence by statute in Illinois, as argued by Coopers, renders the audit interference doctrine a "dead letter."

The audit interference doctrine has a foundation in Illinois common law. See *Cereal Byproducts*, 8 Ill. App. 2d at 336; *Holland*, 127 Ill. App. 3d at 867. Common law rights and remedies are in full force in this state unless repealed by the legislature or modified by a decision of our courts. *People v. Gersch*, 135 Ill. 2d 384, 395-97, 553

N.E.2d 281 (1990). It is also well-established law that legislation intending to abrogate the common law must be clearly and plainly expressed. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 518, 687 N.E.2d 21 (1997). The Accounting Act and the Code do not clearly express the intent to abrogate the audit interference doctrine. Furthermore, the audit interference doctrine, as applied here, fully complies with the comparative negligence standard adopted in the Code because the "injury or damage for which recovery is sought" is the negligent performance of an audit. 735 ILCS 5/2—1116(c) (West 2000).

We hold that the rule adopted in *Cereal Byproducts* and *National Surety*, commonly known as the audit interference doctrine, is the law in Illinois. Thus, the trial court did not err when it applied the audit interference doctrine in the instant case.

■ Although the trial court's application of the audit interference doctrine was proper, both parties disagree with the manner in which the court instructed the jury relative to contributory negligence. The jury was instructed as follows:

"With respect to the Plaintiff's claim for professional negligence, it was the duty of the Plaintiff before and at the time of the occurrence to use ordinary care for the safety of its property. A plaintiff is contributorily negligent, if, one, it fails to use ordinary care for the safety of its property; two, its failure to use ordinary care is a proximate cause of the alleged injury; and, three, affected Defendant's preparation of the audit."

The jury instruction that City Colleges submitted provides in pertinent part:

"You can find that the plaintiff was contributorily negligent only if the Plaintiff's negligence prevented or interfered with the proper performance of Defendant's audit."

We find that *Stroud v. Arthur Andersen & Co.*, 2001 OK 76, 6, 37 P.3d 783, 787 (2001), is instructive on this issue because the facts are quite similar to those in the instant case. The language in City Colleges' proposed jury instruction, although not as detailed, was similar to the instruction given to the jury in *Stroud*, 2001 OK at 6, 37 P.3d at 787. In that case, the jury was instructed as follows:

"As a part of its defense, Defendant first denies that any negligence on its part was the direct cause of the occurrence involved in this lawsuit and any resulting injuries to Plaintiffs. Defendant further contends that if, however, the jury should find that it was negligent to some degree, then it is Defendant's contention that Plaintiffs' own negligence exceeded Defendant's negligence, so as to prevent any recovery by Plaintiffs in this lawsuit.

Under the law you may not find the Plaintiffs were negligent unless you also find that Plaintiffs' negligence contributed to

Defendant's failure to perform its audit work. This means, however, that Plaintiffs' conduct must have been unreasonable under the circumstances and interfered with Defendant's ability to perform its duty." *Stroud*, 2001 OK at 6 n.7, 37 P.3d at 787 n.7.

The Oklahoma Supreme Court decided that the audit interference doctrine was properly applied despite the fact that Oklahoma, like Illinois, is a comparative negligence jurisdiction. The Oklahoma high court further determined that the jury instruction given relative to the issue of comparative negligence was proper. The trial court here adopted a modified version of the pattern instruction. We are guided in our determination as to whether the trial court properly instructed the jury by *Savage*, 256 Ill. App. 3d at 284, and Supreme Court Rule 239(a) (134 Ill. 2d R. 239(a)). Supreme Court Rule 239(a) provides:

"Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law. Whenever IPI does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given in that subject should be simple, brief, impartial, and free from argument." 134 Ill. 2d R. 239(a).

After reviewing the jury instructions and the applicable parts of the record, although the instruction might have been worded differently in part, we find that the instruction accurately states the law in Illinois and is neither misleading nor argumentative.

■ Having determined that the trial court properly applied the audit interference doctrine under Illinois law and instructed the jury, we now address City Colleges' claim that no reasonable juror could conclude that City Colleges was 45% negligent in terms of affecting Coopers' audit. City Colleges posits that the jury must have considered negligence that did not relate to Coopers' audit. Coopers, however, produced evidence that the Board represented to it, in a letter signed by the acting controller, that the Board exercised due care in furnishing information relative to Coopers' audit. Coopers also argued that the verbal representations made to Coopers by Dr. Luhmann were misleading and interfered with the audit.

This evidence was presented to the jury and both parties vehemently argued their positions to the jury. It is within the jury's province to resolve conflicts in the evidence, and as long as the jury's resolution is supported by credible evidence, a reviewing court should not substitute its judgment for that of the jury. *Wojcik v. City of Chicago*, 299 Ill. App. 3d 964, 980, 702 N.E.2d 303 (1998). On appeal,

this court should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence, which did not greatly preponderate either way. *Maple*, 151 Ill. 2d at 452-53.

## II

██ City Colleges next argues that this court should set aside the verdict on the breach of contract and grant a new trial on the issue of damages. City Colleges argues that the palpable inadequacy of the contract damages, in light of the plain inconsistency with the tort damages, requires that we set aside the verdict and grant City Colleges a new trial. A jury's assessment of damages will not be disturbed unless: (1) it is demonstrably inadequate or against the manifest weight of the evidence; (2) the amount is either erroneous or was based on passion or prejudice; (3) the jury's award bears no reasonable relation to the injury suffered by the plaintiff as a result of the defendant's conduct; or (4) it is clear from the record that the jury disregarded proven elements of damages. *Cerveny v. American Family Insurance Co.*, 255 Ill. App. 3d 399, 406, 626 N.E.2d 1214 (1993). City Colleges argues that the jury's award implicated all of the above with the exception of being based on passion or prejudice, and thus, a new trial on the issue of damages is appropriate. We disagree.

●19 In our view, the jury came to its conclusion based on the facts and evidence presented to it. A jury's award will not be found to be against the manifest weight of the evidence merely because it can be characterized as less than generous. *Gruidl v. Schell*, 166 Ill. App. 3d 276, 283, 519 N.E.2d 963 (1988). Furthermore, it is of no significance to the validity of an award that it differs from an estimate of damages made by an expert, for a jury may reduce an expert's damage calculation without invalidating its verdict. *F.L. Walz, Inc. v. Hobart Corp.*, 224 Ill. App. 3d 727, 733-34, 586 N.E.2d 1314 (1992). As the defendant points out, the jury could have decided that City Colleges' damages relative to the breach of contract were the fees paid to Coopers for the 1993 audit ($275,000), plus the cost to hire another auditor to replace Coopers. Accordingly, we hold that the award was supported by the evidence.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

COHEN, P.J., and McNULTY, J., concur.